PASSPORT

# U.S. District Court
## Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.2 (Revision 1.2)] (Albany)
## CRIMINAL DOCKET FOR CASE #: 1:18-mj-00415-DJS-1
### Internal Use Only

Case title: USA v. Salzman                     Date Filed: 07/24/2018

Assigned to: Magistrate Judge Daniel J. Stewart

**Defendant (1)**

**Lauren Salzman**

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |

| **Complaints** | **Disposition** |
| --- | --- |
| 18:1962(c): Racketeering Conspiracy | |

**Plaintiff**

| **USA** | represented by | **Alicia Suarez** |
| --- | --- | --- |
| | | Office of United States Attorney - Albany |
| | | James T. Foley U.S. Courthouse |
| | | 445 Broadway, Room 218 |
| | | Albany, NY 12207-2924 |
| | | 518-431-0247 |
| | | Email: alicia.g.suarez@usdoj.gov |
| | | *LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*
*Bar Status: Active*
*Fee Status: waived_2018*

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2018 | 1 | Rule 5(c)(3) Documents Received as to Lauren Salzman from the Eastern District of New York. (mab) (Entered: 07/25/2018) |
| 07/24/2018 | | Rule 5(c)(3) arrest of Lauren Salzman. (mab) (Entered: 07/25/2018) |
| 07/24/2018 | | Text Minute Entry for proceedings (3:16PM-3:51PM) held before Magistrate Judge Daniel J. Stewart: Initial Appearance pursuant to Rule 5(c)(3) and Detention Hearing as to Lauren Salzman held on 7/24/2018. Appearances: AUSA Alicia Suarez, AUSA Cyrus Rieck and AUSA Tanya Hajjar (EDNY); James Burke, Esq. for Defendant appearing by telephone. Defendant confirms that she has retained Atty Burke for representation in this matter. Atty Burke advises that he is not admitted to the NDNY, but makes a verbal pro hac vice request. The Court permits Atty Burke to appear by telephone and for purposes of this proceeding only. Defendant is advised of her charges pending in the Eastern District of New York, rights, maximum penalties and given a copy of the Superseding Indictment. Government submits a detention memo, however, advises the Court that an agreement with Atty Burke has been reached in terms of bail and conditions. Atty Burke confirms such agreement, however, states objections to the proposed condition of electronic monitoring. The Court sets a bond in the amount of $5,000,000.00 to be secured by $50,000.00 cash or US Property and co-signed by her grandparents. Defendant signs the bond. Conditions of release are set and acknowledged by Defendant. Defendant signs a Waiver of Rule 5 Hearings (Identity Hearing and Production of Warrant). The Court will send the Waiver to Atty Burke for signature. Defendant is remanded until bond is posted and until her US Passport is surrendered. (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 07/25/2018) |
| 07/24/2018 | 2 | MEMORANDUM regarding bail and detention filed by United States of America. (mab) (Entered: 07/25/2018) |
| 07/24/2018 | 3 | WAIVER of Rule 5(c)(3) Hearing (Identity Hearing and Production of Warrant) in this District by Lauren Salzman. (mab) (Entered: 07/25/2018) |
| 07/24/2018 | 4 | ORDER Setting Conditions of Release as to Lauren Salzman (1). Bond set in the amount of $5,000,000.00 secured by $50,000.00 cash or US Property and co-signed by her grandparents. Defendant is remanded until conditions are satisfied. Signed by Magistrate Judge Daniel J. Stewart on 7/24/2018. (mab) (Entered: 07/25/2018) |
| 07/25/2018 | 5 | Appearance Bond of in case as to Lauren Salzman. Bond in the amount $5,000,000.00 secured by $50,000.00 cash posted in Eastern District of New |

| | | |
|---|---|---|
| | | York by Lorraine Loshin and Milton Loshin. (mab) (Entered: 07/25/2018) |
| 07/25/2018 | <u>6</u> | Receipt for Surrender of Passport as to Lauren Salzman. Passport Number US 475184817 issued by USA placed in vault in Albany. (mab) (Entered: 07/25/2018) |
| 07/25/2018 | <u>7</u> | ORDER TO RELEASE DETAINED DEFENDANT as to Lauren Salzman. Signed by Magistrate Judge Daniel J. Stewart on 7/25/2018. (mab) (Entered: 07/25/2018) |
| 07/25/2018 | 8 | TEXT NOTICE to the Clerk, Eastern District of New York as to Lauren Salzman: On 7/24/2018, Defendant appeared in the NDNY as a result of an arrest warrant issued under your case number 18-CR-204-NGG. The defendant waived her right to Identity Hearing and Production of Warrant in this district and was released. Please contact Maria Blunt at 518-257-1843 if you have any questions concerning this notice. [Copies of documents and docket sheet sent to Eastern District of New York via email]. (mab) (Entered: 07/25/2018) |



MKM:TH/MKP
F. #2017R01840

July 24, 2018

<u>By Hand and ECF</u>

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Raniere, et al.
      <u>Criminal Docket No. 18-204 (NGG) (S-1)</u>

Dear Judge Garaufis:

   The government respectfully submits this letter to set forth the government's position with respect to bail as to the newly arrested defendants – Clare Bronfman, Kathy Russell, Lauren Salzman and Nancy Salzman (the "defendants") – who were charged in the above-captioned superseding indictment. Defendant Bronfman will be making her initial appearance today at 3:00 p.m. before the Court. Defendants Russell, Lauren Salzman and Nancy Salzman will be arraigned in the Northern District of New York.

   For the reasons set forth below, the government respectfully submits that all four defendants pose a significant flight risk. The defendants should only be released on bonds commensurate with each defendant's respective financial resources, substantially secured where appropriate, and signed by financially responsible sureties unaffiliated with Nxivm. Moreover, the defendants should all be subject to additional conditions of release including electronic monitoring for all defendants and home confinement for Clare Bronfman and Lauren Salzman.

BACKGROUND

A. <u>Overview</u>

   On July 23, 2018, a federal grand jury in Brooklyn, New York returned a sealed superseding indictment charging the defendants (including Keith Raniere and Allison Mack, who were charged in the original indictment) with participating in a long-running racketeering conspiracy, among other crimes. The superseding indictment, unsealed

following the defendants' arrests, charges the defendants with racketeering conspiracy and charges Clare Bronfman with a separate count of identity theft and Lauren Salzman with separate counts of forced labor and wire fraud conspiracy.

The facts underlying the charges in the superseding indictment center around several pyramid-structured organizations that Raniere founded in the Albany, New York area, including Nxivm and various related entities, as well as an organization referred to as "DOS," which offered purported self-help programs. Nxivm offered classes based on Raniere's teachings, costing thousands of dollars each, and recruited members from all over the United States, including the Eastern District of New York, and elsewhere. Participants were encouraged to pay for additional classes and to recruit others to take classes in order to rise within the ranks of Nxivm.

In 2015, Raniere created a secret society called "DOS," which was comprised of "masters" who recruited and commanded groups of "slaves." DOS masters persuaded slaves to join DOS by describing it as a secret women's empowerment group or sorority. Prospective slaves were asked to provide "collateral" to prevent them from leaving the group or disclosing it to others. Collateral included sexually explicit photographs and videos, rights to financial assets, and videos or letters of (true or untrue) confessions that would be damaging to the prospective slave's family members and friends. After joining DOS, slaves were required to provide additional collateral and to pay "tribute" to their masters, including by performing tasks that would otherwise be compensable. In addition, several DOS slaves were directed to have sex with Raniere, whose participation in DOS was not disclosed. Aside from Raniere, all members of DOS were female.

As alleged in the superseding indictment, Raniere and an "inner circle," including the defendants, comprised an organized criminal enterprise (the "Enterprise") that engaged in various activities with the aim of promoting Raniere and recruiting others into Nxivm and DOS for financial and personal benefits. Members of Raniere's inner circle held high-ranking positions in one or more of the Raniere-founded organizations, including serving as executives, directors and officers of Nxivm. Some members of Raniere's inner circle also served as "first-line masters" directly under Raniere, meaning that they comprised the second-highest level within the DOS pyramid and that, other than Raniere, they wielded the most power within DOS.

B. Defendants

i. Clare Bronfman

Defendant Bronfman was a member of the Enterprise and a high-ranking member of Nxivm. She served on Nxivm's Executive Board from at least 2009 to 2018. Bronfman is named in three predicate acts. First, in Racketeering Act Two, Bronfman is alleged to have conspired to commit identity theft and to have committed identity theft. These predicate acts arise out of a scheme to obtain usernames and passwords of people believed to be Nxivm's enemies so their emails could be monitored by the Enterprise.

Second, in Racketeering Act Five, Bronfman is alleged to have encouraged and induced the illegal entry of an alien for Bronfman's financial gain and to have committed money laundering in order to facilitate that crime. Bronfman engaged in international wire transfers to make it fraudulently appear as if the victim had the financial resources to obtain an investor visa when in fact the victim did not. Third, in Racketeering Act Ten, Bronfman is alleged to have conspired to commit identity theft. Bronfman engaged in a monthly practice of facilitating Raniere's use of a dead person's credit card account by arranging to pay the monthly credit card bill using the dead person's bank account. Raniere used this credit card account as part of a scheme to avoid paying taxes by keeping his assets in the name of others. As a member of the Enterprise, Bronfman also has led efforts to discredit DOS victims and has orchestrated abusive litigation meant to intimidate and attack perceived enemies and critics of Raniere.

### ii. Kathy Russell

Defendant Russell was a member of the Enterprise and a high-ranking member of Nxivm. She also served as Nxivm's bookkeeper. Russell is named in two predicate acts. First, in Racketeering Act One, Russell is alleged to have conspired to commit identity theft and to have conspired to unlawfully possess a false identification document. These predicate acts arise out of a scheme by co-conspirators to smuggle an alien into the United States through Canada after the alien was denied legitimate entry into the United States. Russell drove from Albany, New York to Toronto, Canada where she met the alien and provided her with an identification card bearing the last name and birthdate of a woman who had recently died. Using the false identification, the alien was granted entry into the United States and Russell drove her to Clifton Park, New York, where many members of Nxivm including Raniere lived. Second, as alleged in in Racketeering Act Two, Russell was also part of the scheme to obtain usernames and passwords of people believed to be Nxivm's enemies so their emails could be monitored by the Enterprise.

### iii. Lauren Salzman

Defendant Lauren Salzman was a member of the Enterprise and a high-ranking member of Nxivm. She served on Nxivm's Executive Board from at least 2009 to 2018. She was also a first-line master in DOS. Lauren Salzman is named in three predicate acts and two substantive counts. In Racketeering Act Six, Lauren Salzman is alleged to have engaged in trafficking a victim for labor and services and document servitude. These predicate acts stem from years of abuse of an illegal alien living in Clifton Park, New York who was at one time a member of Raniere's inner circle and a sexual partner of Raniere's, in part to extract work from her. Eventually the victim was confined to a room as punishment after she developed romantic feelings for a man who was not Raniere. The victim had only sporadic visitors, including Lauren Salzman, who were tasked with "helping" the victim heal her "ethical breach" with Raniere. The victim was told that if she left the room she would be sent to Mexico without any identification documents.

3

While in the room the victim went for months-long stretches without any human contact. After nearly two years in the room, the victim left the room, and, as threatened, she was driven to Mexico without any identification documents. Once in Mexico, the victim repeatedly reached out to her family by email for help with her identification documents. Her family was instructed by co-conspirators, including Lauren Salzman, not to send the victim her documents and co-conspirators, including Lauren Salzman, directed the family to respond to the victim by demanding the victim resume performing services for the members of the Enterprise in order to see her family again. Indeed certain members of the victim's family did not speak to her again for many years.

The other predicate acts and substantive charges stem from Lauren Salzman's involvement as a first line master in DOS, by which she obtained property and services from her slaves based on material lies and omissions and through extortion. Lauren Salzman was also one of the leaders of a disinformation campaign designed to disseminate lies about DOS to Nxivm members and others in order to discredit victims.

### iv. Nancy Salzman

Nancy Salzman was a member of the Enterprise and the President of Nxivm. She is Lauren Salzman's mother. Nancy Salzman is named in two predicate acts. First, Nancy Salzman is named as part of the conspiracy in Racketeering Act Two to commit identity theft by obtaining the usernames and passwords of perceived enemies of Nxivm in order to monitor their email accounts. Second, Nancy Salzman is named in Racketeering Act Three as part of a scheme to alter records for use in an official proceeding. That predicate act stems from a lawsuit Nxivm filed against a cult deprogrammer and a former student, among others. The former student countersued alleging various consumer perception claims stemming from Nxivm's curriculum. In discovery, Nxivm was ordered to produce videos of Nancy Salzman teaching courses the student had taken. Nxivm opposed this request initially but eventually relented and claimed to have provided "unedited" copies of the videos. In reality, co-conspirators, including Nancy Salzman, agreed to edit the videos to remove material that they believed would have supported the former student's claims and to make it look as if the videos were unedited.

Moreover, Nancy Salzman in her role as second-in-command to Raniere within Nxivm, was instrumental in exalting Raniere's teaching and ideology and in promoting a culture of absolute commitment and deference to Raniere. Nancy Salzman also personally encouraged many students to go into debt in order to take expensive Nxivm classes or to enter into low value "exchanges" by which students would take a week-long class in exchange for teaching that same class three times. Nancy Salzman, a registered nurse, also developed purportedly therapeutic techniques called "Explorations of Meaning" ("EMs"), which were sometimes used in coercive ways to manipulate Nxivm students.

<u>ARGUMENT</u>

I.   <u>Legal Standard</u>

Under the Bail Reform Act, 18 U.S.C. §§ 3141 <u>et seq</u>., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995); <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987); <u>Chimurenga</u>, 760 F.2d at 405. In addition, a court may also order detention if there is "a serious risk that the [defendant] will ... attempt to obstruct justice, or ... to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B); <u>see United States v. Friedman</u>, 837 F.2d 48 (2d Cir. 1988).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the person's "character . . . [and] financial resources"; and (4) the seriousness of the danger posed by the defendant's release. <u>See</u> 18 U.S.C. § 3142(g). Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. <u>See</u> 18 U.S.C. § 3142(f)(2); <u>see also United States v. Abuhamra</u>, 389 F.3d 309, 320 n.7 (2d Cir. 2004) (bail hearings are typically informal affairs, not substitutes for trial or discovery); <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); <u>Ferranti</u>, 66 F.3d at 542 (same); <u>United States v. Martir</u>, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

II.   <u>The Defendants Pose a Significant Risk of Flight</u>

A substantial secured bond is necessary based on the flight risk posed by the defendants in light of (1) the nature and circumstances of the offenses, including the fact that many of the offenses are crimes of deceit and that the defendants face lengthy prison sentences; (2) the strength of the government's case against each defendant; (3) the history and characteristics of the defendants including Clare Bronfman's extraordinary wealth and foreign ties as well as Lauren Salzman and Nancy Salzman's wealth and foreign travel; and (4) the risk of obstruction of justice in this case posed by Clare Bronfman and Lauren Salzman.

A. <u>The Offenses are Serious, Involve Crimes of Deceit and the Defendants Face Lengthy Sentences</u>

The charges in the indictment are properly characterized as serious due to the statutory penalties, the duration and complexity of the criminal conduct and the fact that the charges include multiple crimes of deceit, which courts have held is relevant to the risk of flight analysis. See United States v. Williams, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (finding district court did not commit clear error in finding defendant posed a risk of flight where, among other things, the district court had noted that it was "struck by the fact that a number of [the charges] involve deceit"); United States v. Dimora, No. 1:10CR387, 2012 U.S. Dist. LEXIS 86457, at *8 (N.D. Ohio June 21, 2012) (considering a defendant's ability to use the same "skills of deceit and evasion" that he used to commit crimes to "elude capture"); United States v. Saani, 557 F. Supp. 2d 97, 98-99 (D.D.C. 2008) (defendant's "alleged purposeful and illegal concealment of . . . access" to funds in foreign bank accounts was "directly relevant to [his] flight risk").

The defendants are all facing charges of criminal conduct spanning many years, including racketeering conspiracy, which weighs in favor of a finding of a risk of flight. Moreover, Clare Bronfman, Kathy Russell and Nancy Salzman are all named in predicate acts (and, as to Bronfman a substantive count as well) alleging their participation in multiple crimes of deceit including identity theft as to all three defendants, money laundering as to Bronfman and altering of records in a federal case as to Nancy Salzman.

Lauren Salzman is charged substantively with wire fraud conspiracy, also a crime of deceit, premised on her having obtained property from DOS slaves based on the false claim that DOS was a women-only organization and the material omission that Raniere was the head of the organization. Indeed, all of the DOS-related crimes committed by Lauren Salzman reflect a willingness to commit crimes through lies and manipulation because the truth about the organization was kept from everyone who joined except for the first-line masters. Additionally, as to Lauren Salzman, the serious nature of her crimes is reflected by her having trafficked victims for labor and services.

The significant term of imprisonment that the defendants face upon conviction provides a strong incentive to flee. The racketeering conspiracy count alone carries a statutory maximum sentence of 20 years for each of the defendants. See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight). Bronfman is also facing an additional count of identity theft with a statutory maximum sentence of 15 years. Lauren Salzman is also facing additional counts of forced labor and wire fraud conspiracy, which each carrying additional statutory maximum sentences of 20 years.

## B. The Government's Evidence is Strong as to Each Defendant

The government's case against the defendants is strong. The government will prove at trial that the defendants engaged in the racketeering conspiracy and, where applicable, the substantive offenses charged in the superseding indictment. The government's proof will include, among other evidence, testimony from numerous witnesses, including members of the charged conspiracies; emails and other types of documentary evidence reflecting the defendants' knowledge and participation in the schemes; and banking, financial and corporate records. To give just a few examples of the government's proof:

- Bronfman is charged in an identity theft conspiracy involving the use of a credit card and banking information belonging to one of Raniere's sexual partners after her death in November 2016. Between November 2016 and November 2017, Bronfman sent Raniere regular emails documenting expenses charged to the woman's credit card for Raniere's "review and approval." The expenses charged to the woman's credit card after her death included payments to a chiropractor for Raniere's benefit, as well as thousands of dollars' worth of clothing and shoe purchases for the mother of Raniere's child.

- Multiple witnesses corroborate the details of the predicate acts in which Kathy Russell is named and documentary evidence corroborates those accounts.

- Nancy Salzman is named in a predicate act stemming from conspiracy to alter records for an official proceeding, with regard to records produced in a civil case in July 2008. Documentary evidence, including a contemporaneous email to Nancy Salzman, confirms the scheme to intentionally alter the records.

- Lauren Salzman is named in a predicate act stemming from trafficking of a victim from at least March 2010 through April 2012. Once the victim was sent to Mexico without any identification documents, Lauren Salzman participated in email discussions concerning how to respond to the victim who was pleading with her family to send her the identification documents. For instance, on February 29, 2012, the victim wrote to her father (a follower of Raniere): "Without my papers I cannot do anything about my visa, at all. I am so sad. I cry every time I am alone. . . . Why wont you send me my papers? . . . i will pay you for sending them if that is what you want. There is nothing I can do without them. . . . I have been trying to survive." This email was then forwarded to Lauren Salzman and other co-conspirators, and Lauren Salzman agreed with a decision by the group to continue not to send the victim her papers and said in various emails that the victim was "gameplaying" and criticized the victim for having "failed to submit a concise plan" for completing her Nxivm-related work. As to Lauren Salzman's participation in DOS, the government possesses significant electronic evidence corroborating witness accounts of her involvement as well as bank account authorizations and sexually explicit photographs and videos that were provided to Lauren Salzman based on lies or extortion.

## C. The Defendants' History and Characteristics Demonstrate a Serious Risk of Flight

### i. Clare Bronfman

Clare Bronfman is a woman of extraordinary wealth with access to significant assets in several places around the world. A defendant's financial resources are a relevant aspect of her "history and characteristics." 18 U.S.C. 3142(g)(3); see United States v. Patriarca, 948 F.2d 789, 795 (1st Cir. 1991) (explaining that a district court should consider the extent of defendant's assets and net worth before determining the amount of property to be posted as forfeiture condition).

Bronfman is the daughter of the former chairman of the Seagram Company, whose net worth was estimated to be approximately $2.6 billion. In a 2011 deposition, Bronfman testified that her grandfather established trust funds for each of his grandchildren which provided her with substantial assets with which to invest. Bronfman testified that she loaned $65 million to Raniere to trade in commodities markets, which Raniere thereafter lost and which Bronfman did not recoup. In the same deposition, Bronfman testified that she did not make a "single investment" in her "own name" and that there was "a veil [she] always wanted to maintain." Bronfman has incorporated and registered a number of entities, in various names, in California, Virginia and Connecticut.

Bronfman is a frequent international traveler, with access to a private jet, and has an ownership stake in a private island in Fiji's Lomaiviti Archipelago. Within the last three years alone, Bronfman has traveled to Mexico City, Paris, Toluca, Guadalajara, Monterrey, Vancouver, Israel, Fiji, Havana and Toronto. Extensive travel of this nature further evidences a risk of flight. See, e.g., United States v. Anderson, 384 F. Supp. 2d 32, 36 (D.D.C. 2005). Bronfman also has family living overseas including her mother and her sister.

There can be little doubt that Bronfman is in a position to abandon millions of dollars in cash and property and still live comfortably. These resources and the ease with which Bronfman could flee and live outside the reach of law enforcement makes the risk of flight extraordinarily high in this case, particularly when considered in conjunction with the strength of the government's case and the lengthy sentence the defendant could receive if convicted.

### ii. Lauren Salzman

Lauren Salzman's personal characteristics also weigh in favor of a finding that she poses a risk of flight. Lauren Salzman has significant assets including a home. According to multiple witnesses, as one of the highest-ranking members of Nxivm, Lauren Salzman presented herself as an example of the level of financial success other members of Nxivm could have by recruiting others into Nxivm. Moreover, a number of Nxivm-affiliated companies that have generated revenue are held in Lauren Salzman's name including Jness, a women's program. Additionally, Lauren Salzman also has contacts all over the world from her work with Nxivm and in the past five years she has traveled extensively including to

Mexico, Fiji and Canada. Indeed, when Raniere was originally apprehended in Mexico, Lauren Salzman was staying at a luxury resort with him while he was in hiding. According to public records, Lauren Salzman currently has a federal tax lien filed against her for $32,548. Lauren Salzman also had a previous tax lien in 2009, which was released in 2011. Lauren Salzman's apparent willingness to flout her tax obligations raises a further risk of nonappearance.

### iii. Nancy Salzman

Nancy Salzman's personal characteristics also weigh in favor of a finding that she poses a risk of flight. Nancy Salzman has significant assets including a home and many Nxivm-affiliated businesses in her name including First Principles, which purports to own Nxivm's intellectual property and various real estate holding companies. Moreover, multiple witnesses have informed the government that Nancy Salzman secrets cash in her home and when a search warrant was executed on her home, over a half a million dollars was seized. Nancy Salzman also has contacts all over the world from her work with Nxivm and in the past five years she has traveled extensively including to Mexico, England, Germany and Fiji.

### iv. Kathy Russell

Kathy Russell's personal characteristics also weigh in favor of a finding that she poses a risk of flight. Russell left her family in Alaska to become a bookkeeper for Nxivm fourteen years ago. She is described by at least one witness as adventuresome and capable of driving long distances alone. Indeed, one of the predicate acts in which she is named involved her facilitating an illegal border crossing. Additionally all of Russell's contacts outside of Nxivm are geographically distant, primarily in Alaska, giving her an additional incentive to flee.

Russell's risk of flight is further evidenced by a history of tax liens and judgments against her, which evidence a lack of respect for the law and a risk of nonappearance. For example, according to public records, in 2006 Russell had a $9,631 federal tax lien filed against her, in 2012 Russell had a $36,714 federal tax lien filed against her and in 2013 Russell had a $3,510 judgment issued against her in favor of a credit union.

### D. The Risk of Obstruction is High

In addition to considering the defendant's risk of flight, the Court may also consider how best to reduce the risk of obstruction of justice in setting bail conditions. 18 U.S.C. § 3142(f)(2)(B). Both Bronfman and Lauren Salzman present significant risks of obstruction.

Evidence obtained during the investigation has demonstrated that Bronfman went to significant lengths to compile information and threaten litigation against those she considered to be an enemy or critic of Raniere. As one example, a January 26, 2016 email from Bronfman to Raniere attached an excel spreadsheet, authored by Bronfman, titled "Adverse Party Identifying Info." The spreadsheet contains the names, telephone numbers,

and email addresses of dozens of individuals deemed adverse to Raniere, including reporters and a victim of a crime alleged in the superseding indictment. Another spreadsheet created by Bronfman and sent to Raniere on September 14, 2017 is titled "Individuals Involved" and contains a list of individuals and the purported "damage" they caused to Raniere-created entities. One column in the spreadsheet is titled "Crime," under which Bronfman documented the supposed crimes each individual committed against Raniere, and another column in the spreadsheet is titled "Priority Level," with numbers listed beneath.

This conduct is particularly relevant because a court may also order detention if there is "a serious risk that the [defendant] will ... obstruct or attempt to obstruct justice, or ... intimidate ... a prospective witness," among other things. 18 U.S.C. § 3142(f)(2)(B); see United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). Bronfman's involvement in efforts to target and silence critics of Raniere is particularly concerning in light of the broader pattern of harassment, coercion and abusive litigation that is described as one of the means and methods of the conspirators in the superseding indictment. As to Lauren Salzman, after the media began reporting on DOS, Lauren Salzman helped gather information for Bronfman about victims and potential witnesses that could be used against them.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendants pose a significant risk of flight and should not be released unless and until they have posted substantial bonds, secured where appropriate, commensurate with their assets. The bonds should also signed by financially responsible sureties who are unaffiliated with Nxivm. Furthermore, all of the defendants should be on electronic monitoring because of their minimal ties to the Eastern District of New York. Other conditions of release should also be imposed including that none of the defendants should be permitted to have contact with any other current or former members of Nxivm (except blood relatives) or any affiliated organizations.

In the case of Clare Bronfman, because of her extraordinary wealth and extensive foreign ties, the amount of the bond should be substantial and largely secured. Because of the heightened risk of flight posed by Bronfman as well as the additional risk of

obstruction posed by both Bronfman and Lauren Salzman, if released, Bronfman and Lauren Salzman should also be subject to the condition of home confinement.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
(718) 254-7000

cc:    Hon. Nicholas G. Garaufis (by hand and ECF)
Defense Counsel (by email)
Clerk of Court (by ECF)

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the

Northern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   1:18-MJ-415-DJS |
| LAUREN SALZMAN | ) | |
| | ) | Charging District's Case No.   18-CR-204-NGG |
| _Defendant_ | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
(Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*     Eastern District of New York

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☐     an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  JULY 24, 2018

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

James Burke
_____
_Printed name of defendant's attorney_

AO 199A  Order Setting Conditions of Release

# United States District Court
### Northern District of New York

United States of America

V.

**LAUREN SALZMAN**

Defendant

**ORDER SETTING CONDITIONS OF RELEASE**

Case Number : 1:18-MJ-415

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3) The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(4) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at:  United States District Court
                                  Eastern District of New York
                                  Brooklyn, NY
                                  **Wednesday, July 25, 2018**

**Release on Personal Recognizance or Unsecured Bond**

IT IS FURTHER ORDERED that the defendant be released provided that:

(✔) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of
_____ dollars ($_____) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

**Additional Conditions of Release**

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:
              (Name of person or organization):_____

              (City and state):_____ (Tel. No.)_____
who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

              Signed:_____ _____
                              Custodian or Proxy            Date

AO 199A  Order Setting Conditions of Release

## Conditions of Release (continued)

(X)  (7)  The defendant shall:

(X) (a)    Report to the Pretrial Services upon release, telephone number (518) 257-1700 , and as directed thereafter. The defendant shall allow a probation officer to visit at anytime at the defendant's home or elsewhere, and shall permit confiscation of any contraband observed in plain view of the probation officer. The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

(X) (b)    Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property: In the amount of $5,000,000.00 to be secured by $50,000.00 in US Property or cash in the Eastern District of New York and co-signed by Defendant's grandparents.

( ) (c)    Post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described:

( ) (d)    Execute a bail bond with solvent securities in the amount of

( ) (e)    Maintain or actively seek employment.

( ) (f)    Maintain or commence an educational program.

(X (g)    Surrender any passport to: The Clerk of the Court[1].

(X) (h)    Obtain no passport or travel documents.

(X)(i)    Restrict travel to the Northern, Eastern and Southern Districts of New York unless approved by Pretrial Services or the Court.

(X) (j)    Remain at an authorized address as approved by Pretrial Services or the Court.

(X)(k)    Avoid all contact with potential co-defendants and potential defendants in related cases unless approved by Pretrial Services or the Court. Defendant may have contact with her mother, Nancy Salzman, but is not to discuss this case.

( ) (l)    Avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to : _____

( ) (m)    Submit to a mental health evaluation and/or treatment as approved by Pretrial Services or the Court. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

( ) (n)    Return to custody each (week)day as of  after being released each (week)day as of  for employment, schooling, or the following limited purpose(s):

( ) (o)    Maintain residence at a halfway house or community corrections center, as approved by Pretrial Services or the Court.

(X) (p)    Refrain from ( ) any (X) excessive use of alcohol.

( ) (q)    Refrain from possession, use, distribution, importation, or manufacture of any and all controlled substances and any and all controlled substance analogues, as defined in 21 U.S.C. §802, except that possession and use of a controlled substance properly prescribed by a licensed medical practitioner is permitted.

( ) (r)    Submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, and/or a remote alcohol testing system.

( ) (s)    Participate in and successfully complete a program of inpatient or outpatient substance abuse therapy and counseling approved by Pretrial Services or the Court. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

(X) (t)    Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

(X) (u)    Participate in one of the following home confinement program components and abide by all the requirements of the program which (X) will or ( ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program as determined by the probation officer based upon ability to pay.

( ) (v)    Curfew. The defendant is restricted to the defendant's residence every day ( ) from  to  or ( ) as directed by Pretrial Service or the Court.

(X) (w)    Home Detention. The defendant is restricted to the defendant's approved residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by Pretrial Services or the Court.

( ) (x)    Home Incarceration. The defendant is restricted to the defendant's residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by Pretrial Services or the Court.

(X) (y)    Report within 72 hours, to Pretrial Services or the Court any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

(X) (z)    The defendant shall not commit another crime, in the United States or elsewhere (including any criminal violation of the law of any province, state, county, town, city, village, or other subdivision of a country, or of any recognized tribe).

---

[1]For U.S. Passports, the passport will be returned to the U.S. Office of Passport Policy and Planning upon conviction; For Foreign Passports, the passport will be forwarded to the Bureau of Immigration and Customs Enforcement (ICE); The passport will only be returned to the defendant if the case is dismissed.

AO 199A  Order Setting Conditions of Release

will only be returned to the defendant if the case is dismissed.

### Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court. The penalties for tampering, retaliating and intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:
(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you shall be fined not more than $250,000 or imprisoned for not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
City and State

### Directions to United States Marshal

( ) The defendant is ORDERED released after processing.

(X) The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date:   July 24, 2018

_____
Hon. Daniel J. Stewart
U.S. Magistrate Judge

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT

for the

Northern District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| **Lauren Salzman** | ) Case No. 1:18-mJ-415-DJS |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, **Lauren Salzman** _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )   to appear for court proceedings;
( X )   if convicted, to surrender to serve a sentence that the court may impose; or
(   )   to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(   ) (1)  This is a personal recognizance bond.

(   ) (2)  This is an unsecured bond of $ _____ .

( X ) (3)  This is a secured bond of $ **5,000,000.00** , secured by: **$50,000.00 cash or US property**

    ( X ) (a) $ **50,000.00** , in cash deposited with the court. **in the EDNY**

    (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

        If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)    all owners of the property securing this appearance bond are included on the bond;

    (2)    the property is not subject to claims, except as described above; and

    (3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _7/24/18_          † _Vauven Loshin_
                                          *Defendant's signature*

_Lorraine Loshin_          _Lorraine Loshin_   7-24-18
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

_Milton Loshin_             _Milton Loshin_   7/24/18
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

*Surety/property owner – printed name*        *Surety/property owner – signature and date*

CLERK OF COURT

Date: _7/25/2018_          _Maria A. Blue_
                                     *Signature of Clerk or Deputy Clerk*

Approved.

Date: _July 25, 2018_                                  *Judge's signature*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

             -against-

    LAUREN SALZMAN

-------------------------------------------------X

**ORDER
FOR ACCEPTANCE OF CASH BAIL**

NDNY Docket No. 18-MJ-415
EDNY Docket No. 18CR204(NGG)

    Bail having been fixed by Hon. ___Judge Stewart___, in the above entitled action in the amount of $ ___5,000,000___ of which sum $___50,000___ in cash is to be deposited with the Clerk of the Court.

    It is hereby ordered that the Clerk, United States District Court for the Eastern District of New York accept the said amount of $___50,000___ when tendered on behalf of the above defendant.

    **SO ORDERED.**

Dated: Brooklyn, New York
      July 24, 2018

UNITED STATES MAGISTRATE JUDGE

Receipt No. 4653130531
Money Deposited By: ~~Ballentina~~ LORRAINE LOSHIN
address & Telephone 51 STRATFORD TERRACE
           CRANFORD, NJ 07016
           908 - 276 - 9481

&%RPCourt Name: Eastern District of New York

Division: 1
Receipt Number: 4653130531
Cashier ID: campbell
Transaction Date: 07/25/2018
Payer Name: LORRAINE LOSHIN

---

TREASURY REGISTRY
For: LAUREN SALZMAN
Case/Party: D-NYE-1-18-CR-000204-005
Amount:         $50,000.00

---

PAPER CHECK CONVERSION
Amt Tendered: $50,000.00

---

Total Due:      $50,000.00
Total Tendered: $50,000.00
Change Amt:     $0.00

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JUL 2 5 2018

LAWRENCE K. BAERMAN, CLERK

No. **1482**

## UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA )
                )
    vs.           )
                )
Laura Salzman )

at _Albany_

Case No. _1:18-mj-415_

Received on behalf of the United States from _Michelle Salzman_

☒ Collateral

☒ Passport No. _US 475184817_

                     **(Name)**
              _Clifton Park NY_
       **(Address)**          **(City, State and Zip Code)**

☐ Deed for property located at _____

_____ owned by _____

☐ Other _____

Receipt is hereby acknowledged.      Clerk, U.S. District Court

_7/25/2018_        By: _Kathy Rogers_

Location: _____

    Disposition: _____

Received the above item as described,

_____ _____ _____
     **(Signature)**          **(Print Name)**         **(Date)**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

    v.                                  **1:18-MJ-415-DJS**

**LAUREN SALZMAN**

               **Defendant**

---

**DANIEL J. STEWART**
**U.S. MAGISTRATE JUDGE**

### ORDER TO RELEASE DETAINED DEFENDANT

The above-named Defendant has satisfied the conditions for release and the Defendant shall be released from custody forthwith.

**IT IS SO ORDERED.**

Daniel J. Stewart
U.S. Magistrate Judge

**DATED:**  July 25, 2018