1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------------x
     UNITED STATES OF AMERICA,
3
                        Plaintiff,          Docket No.:
4                                           18 CR 204 (NGG)
            versus
5
     KEITH RANIERE, CLARE BRONFMAN, ALLISON
6    MACK, KATHY RUSSELL, LAUREN SALZMAN,
     and NANCY SALZMAN,                     U.S. Courthouse
7                                           225 Cadman Plaza East
                        Defendant.          Brooklyn, NY 11201
8    ------------------------------------x
                                            February 28, 2019
9                                           11:00 a.m.

10          Transcript of Criminal Cause for Status Conference

11   Before:   HONORABLE NICHOLAS G. GARAUFIS,
                              District Court Judge
12

13                            APPEARANCES

14   For the Government:        RICHARD P. DONOGHUE, ESQ.
                                United States Attorney
15                              Eastern District of New York
                                271 Cadman Plaza East
16                              Brooklyn, New York 11201
                                BY:  MOIRA KIM PENZA, ESQ.,
17                                   TANYA HAJJAR, ESQ.,
                                     MARK LESKO, ESQ.,
18                                   KEVIN TROWEL, ESQ.,
                                     Assistant U.S. Attorneys
19
     For Defendant Raniere:     BRAFMAN & ASSOCIATES, P.C.
20                              767 Third Avenue
                                New York, New York 10017
21                              BY:  MARC A. AGNIFILO, ESQ.
                                     TENY R. GERAGOS, ESQ.
22
                                DEROHANNESIAN & DEROHANNESIAN
23                              677 Broadway, Suite 707
                                Albany, New York 12207
24                              BY:  PAUL DEROHANNESIAN, II, ESQ.
                                     DANIELLE R. SMITH, ESQ.
25

     MICHELE NARDONE, CSR -- Official Court Reporter

                        USA v. Raniere, et al.

 1    Appearances (continuing):

 2    For Defendant Bronfman:       HAFETZ & NECHELES LLP
                                    10 East 40th Street, 48th Floor
 3                                  New York, New York 10016
                                    BY:  KATHLEEN CASSIDY, ESQ.
 4
                                    GERAGOS & GERAGOS, APC
 5                                  644 S. Figueroa Street
                                    Los Angeles, California 90017
 6                                  BY:  MARK J. GERAGOS, ESQ.

 7    For Defendant Mack:          KOBRE & KIM LLP
                                    800 Third Avenue
 8                                  New York, New York 10022
                                    BY:  SEAN S. BUCKLEY, ESQ.
 9                                       MATTHEW MENCHEL, ESQ.

10    For Defendant Russell:       SHER TREMONTE LLP
                                    90 Broad Street, 23rd Floor
11                                  New York, New York 10004
                                    JUSTINE A. HARRIS, ESQ.
12
      For Defendant L. Salzman:    QUARLES & BRADY, LLP
13                                  Two North Central Avenue
                                    Phoenix, Arizona 85004
14                                  BY:   HECTOR DIAZ, ESQ.

15    For Defendant N. Salzman:    ROTHMAN, SCHNEIDER, SOLOWAY &
                                    STERN, P.C.
16                                  100 Lafayette Street, Suite 501
                                    New York, New York 10013
17                                  BY:  ROBERT SOLOWAY, ESQ.
                                         DAVID STERN, ESQ.
18
      Court Reporter:              MICHELE NARDONE, CSR
19                                  Official Court Reporter
                                    Phone:  718-613-2601
20                                  Email:  Mishrpr@aol.com

21    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
22

23

24

25

      MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1          (In open court.)

2          (Defendants present.)

3          THE CLERK:  Criminal cause for status conference.

4          Counsel, please state your appearances.

5          MS. PENZA:  Moira Kim Penza, Tanya Hajjar, Mark Lesko,

6  and Kevin Trowel for the United States.  Good morning, Your

7  Honor.

8          THE COURT:  Good morning.

9          MR. AGNIFILO:  I think Mr. Raniere is just on the way

10  in.

11          THE COURT:  We will wait for him.

12          (Pause.)

13          MR. AGNIFILO:  Good morning, judge.  Marc Agnifilo.

14  I'm here with Teny Geragos, Paul DerOhannesian, and Danielle

15  Smith, for Keith Raniere, who is now with us in court.

16          THE COURT:  Good morning.

17          Good morning, Mr. Raniere.

18          MR. DIAZ:  Good morning, Your Honor.  Hector Diaz for

19  Lauren Salzman, who is standing here to my left.

20          THE COURT:  Good morning, Ms. Salzman.

21          DEFENDANT SALZMAN:  Good morning.

22          MR. BUCKLEY:  Good morning, Your Honor, Sean Buckley

23  and Matthew Menchel, on behalf of Ms. Mack, who is standing to

24  my right.

25          THE COURT:  Yes.  Good morning, and we have a meeting

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    on the Curcio issue in the afternoon.

2          MR. BUCKLEY:  That's correct, Your Honor.  I thank

3    you.

4          MR. STERN:  Good morning.  David Stern and Robert

5    Soloway for Nancy Salzman.

6          THE COURT:  Good morning, Ms. Salzman.

7          MS. HARRIS:  Good morning, Your Honor.  Justine Harris

8    for Kathy Russell.

9          THE COURT:  Good morning, Ms. Russell.

10         DEFENDANT RUSSELL:  Good morning, judge.

11         MS. CASSIDY:  Good morning, Your Honor.  Kathleen

12    Cassidy, on behalf of Ms. Bronfman, who is to my right.

13         THE COURT:  Good morning.

14         DEFENDANT BRONFMAN:  Good morning, Your Honor.

15         THE COURT:  Please be seated.

16         Let's start with -- let me just advise that I have

17    approved the pro hac vice appearance of Mr. Geragos.

18         MR. GERAGOS:  Thank you, Your Honor.

19         THE COURT:  All right.  So, welcome to the defense

20    team, Mr. Geragos.  You are surrounded by a group of lawyers,

21    both the government and the defense, who are extremely talented

22    criminal lawyers; and I'm sure you will find this as much of an

23    educational experience as I have thus far.

24         MR. GERAGOS:  Thank you, Your Honor.  I already have

25    that experience.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1          THE COURT:  Okay.  Very good.  All right.  So, tell me

2     where we are.  Let's start with this possible superseding

3     indictment that you keep waiving in front of all of us.

4          MS. PENZA:  Yes, Your Honor.  We do intend to

5     supersede.  I know that we have said that.

6          THE COURT:  We are getting close.

7          MS. PENZA:  I know, Your Honor.

8          THE COURT:  I have no intention of putting off this

9     trial, and I'm sure -- I know -- that the defense lawyers also

10    have no intention of putting off the trial.

11         The problem would be if the superseding indictment

12    raised serious issues and the defense were not able to properly

13    prepare for those new claims.  So, you know, I'm encouraging

14    you, if you are doing it, to get it done.  If you are not doing

15    it, let's move ahead.

16         MS. PENZA:  We fully understand that, Your Honor.  Of

17    course, as we have stated repeatedly, our investigation has

18    been ongoing.

19         Under seal we did file a discovery letter last week

20    alerting the court to an additional piece of evidence that we

21    had found.  That is certainly one of the topics that we intend

22    to supersede on.

23         We fully understand the court's concerns, and we

24    intend to do it within the next several weeks.  We will say

25    what we have been trying to do all along is produce discovery

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1   in a manner such that we don't anticipate that there will be

2   significant additional discovery based on the superseding

3   indictment.

4          We have been liberal in providing discovery.  So we

5   believe that the defendants will have had -- obviously, they

6   will say what they need, but in terms of from the government's

7   perspective, we have been providing the information that they

8   would need to prepare for those, for the superseding

9   indictment.

10          Additionally, we did put in a comprehensive motion to

11   admit enterprise evidence.  I believe that all of the topics

12   that would -- I don't think anything will come as a surprise in

13   the superseding indictment.  Potentially what we revealed to

14   the court last week, based on newly discovered evidence, that's

15   the one thing that may have come as a surprise, but we --

16   obviously, it's very serious and we intend to try and supersede

17   on that.

18          THE COURT:  All right.  Anything from the defense?

19          MR. AGNIFILO:  I mean --

20          THE COURT:  That I haven't already said.  I'm trying

21   to preempt you, at least on some arguments here.

22          MR. AGNIFILO:  You are doing a tremendous job

23   preempting me.

24          THE COURT:  Thank you.

25          MR. AGNIFILO:  At the risk of exhuming this horse to

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1   beat it yet again --

2           THE COURT:  Go ahead.

3           MR. AGNIFILO:  Thank you, judge.  We are the last ones

4   to know, and I understand that and I appreciate that.  You

5   know, we have no way of knowing if this is going to prompt

6   someone to want an adjournment.

7           I don't know that -- there is no mention of additional

8   defendants.  So I'm hoping that's not the case, because that

9   would be a tough situation for us all to be in.

10          You know, at this point Mr. Raniere has been in jail

11  for a year.  We have been steadfast about his speedy trial

12  rights, and Your Honor has too.  Your Honor has too.  I just --

13  I don't know -- the problem is this, and we are all stuck with

14  a series of rules and protocols that exist that now I think are

15  coming together to create a potential issue.  They have the

16  right to supersede.  I know they do.

17          Your Honor also has the right to say at a certain

18  point this is the case that's going to trial and, if you change

19  it, if you add things, Your Honor has the right to sever those

20  charges.  Now, we are talking in the realm of speculation, I

21  understand; but at a certain point we actually deserve to know

22  that we are going to trial in April on a certain set of

23  charges.

24          THE COURT:  Oh, yeah, you are; and, if I need to sever

25  something in the interests of justice, to protect your

MICHELE NARDONE, CSR -- Official Court Reporter

                    USA v. Raniere, et al.

1    clients', collectively, rights, I will do it.

2            MR. AGNIFILO:  I appreciate that judge.

3            THE COURT:  So but we are not there yet.

4            MR. AGNIFILO:  I agree.  I agree.

5            THE COURT:  I'm placing notice on that possibility by

6    asking these questions.

7            MR. AGNIFILO:  I know you are, judge, and I appreciate

8    it.

9            THE COURT:  That's why I made it the first item to

10   discuss today.

11           MR. AGNIFILO:  I noticed that too and I appreciate

12   that too; and I thank Your Honor for being mindful.

13           THE COURT:  Without beating my, you know, my chest

14   over it, I have trials before and after this one and

15   responsibilities in 500 cases, civil and criminal.  So it's

16   important for everybody, in order to do justice, that we move

17   this case along.

18           MR. AGNIFILO:  Very good.

19           THE COURT:  So we can move other cases along as well.

20           MR. AGNIFILO:  Understood.  Thank you.

21           THE COURT:  Thank you.  Anything else?  Okay.

22           Now, I have the Curcio hearing for Ms. Mack at 2:30

23   this afternoon.

24           There are motions pending before the court, motions to

25   dismiss, which were the subject of oral argument on January 9.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1  In addition, I haven't ruled on a recent motion to dismiss by

2  Ms. Russell.  We are working on all of that.

3       Magistrate Judge Scanlon is providing me with a report

4  and recommendation on the suppression motions that are before

5  her.  I have spoken to her, and we should have an answer on

6  those very soon.

7       In addition, I have a suppression motion on the issue

8  of Ms. Bronfman's materials that were in a rented storage unit,

9  and the government has not responded on that.  Has it?

10      MS. PENZA:  Not yet, Your Honor.  We intend to respond

11  by Monday.

12      THE COURT:  By Monday?  Good.

13      MS. PENZA:  Yes.

14      THE COURT:  Monday meaning the 4th of March?

15      MS. PENZA:  That's correct, Your Honor.

16      THE COURT:  Okay.  Then it's so ordered.  The response

17  is due Monday, the 4th of March.  I don't know whether oral

18  argument will be necessary on that.  I will look at the papers,

19  and, if we need oral argument, I will call for oral argument.

20  Understand?

21      MS. CASSIDY:  That's fine, Your Honor.

22      THE COURT:  Motions in limine will be fully briefed no

23  later than April 5.

24      Where are we on expert disclosures?  I have received

25  the government's expert disclosure, and the defense expert

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    disclosures are due March 15.

2           Are you going to reply in there to the government's

3    expert disclosure?

4           MR. AGNIFILO:  We are.

5           THE COURT:  Disclosures, and provide your own?

6           MR. AGNIFILO:  We are certainly going to reply.  We

7    got a letter in regard to one particular person, Dr. Welner.

8           THE COURT:  Yes, I read the letter.

9           MR. AGNIFILO:  I know, Your Honor has.  We have some

10   issues with the content of the letter.  We don't see any

11   indication of what opinions Dr. Welner is going to give.  We

12   don't have to deal with this now.

13          THE COURT:  Is there a report?

14          MS. PENZA:  Your Honor, Dr. Welner is working on

15   preparing a report.

16          THE COURT:  So the sooner the better.

17          MS. PENZA:  Yes, Your Honor.

18          MR. AGNIFILO:  That's fine.

19          THE COURT:  Will it be ready before the defense is to

20   reply, or to provide their disclosures?

21          MS. PENZA:  We will have to consult with Dr. Welner.

22          THE COURT:  That would be helpful so that we don't

23   have papers flying, you know, all over the place here.

24          MR. AGNIFILO:  So where we are now is we have this

25   letter.  I'm not prepared to call it an expert disclosure

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1   because I don't think it meets the requirements of an expert

2   disclosure because there is no opinion, there is no report.

3         There is an indication at the bottom of the Welner

4   letter that there is going to be other experts on other topics.

5   We don't know what those are.

6         The problem is Your Honor set a deadline, if I'm not

7   mistaken, of February 25 for the government to provide expert

8   disclosures; and it's our opinion they haven't provided any

9   expert disclosures.  They have provided a letter that there is

10  a doctor named Welner who is going to talk about certain

11  topics.  We don't have a report; we don't have any opinions;

12  and we don't have any indication of experts in any other areas,

13  yet there is a reference to that in the letter.

14        THE COURT:  That's why I'm asking if there is a report

15  that you can respond to.

16        MS. PENZA:  So for Dr. Welner we agreed that a report

17  would make sense.  So we will provide that.

18        For the other experts, the reason that there are no

19  names is that we are in the process of formal retention on the

20  government's end.  However, I don't believe that those are the

21  types of subject matters that will require expert reports.  We

22  may provide some background; we will obviously provide the CVs

23  of those experts; we can provide prior testimony, but I don't

24  believe a formal report will be necessary because they are

25  not -- they are not providing the types of opinions where you

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    would typically need an expert report.

2         They are going to provide -- they are going to provide

3    information regarding their expertise generally, as opposed to

4    opining on the specific facts of this case.

5         MR. BUCKLEY:  Your Honor --

6         THE COURT:  Just names for the court reporter.

7         MR. BUCKLEY:  Sean Buckley on behalf of Allison Mack.

8         THE COURT:  Mr. Buckley.

9         MR. BUCKLEY:  Your Honor, just to echo what

10   Mr. Agnifilo said, the court set a deadline for the government

11   to make expert disclosures, February 25.

12        Rule 16 and the Federal Rules of Evidence are clear

13   what must be included in those expert disclosures.  This letter

14   does not satisfy -- does not even come close to satisfying

15   those with respect to Dr. Welner, and it certainly does not

16   come close to satisfying the government's obligations with

17   respect to the individuals it identifies on pages 3 and 4 of

18   the letter, because it doesn't identify any individuals.  It

19   just gives three bullet points of broad categories on which

20   somebody is going to offer an opinion about something with no

21   explanation as to how it's relevant.

22        MS. PENZA:  Your Honor --

23        MR. BUCKLEY:  This type of disclosure, how it would be

24   possible for us to be able to prepare a response or an

25   objection to these experts by March 15 is questionable at best,

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    let alone to identify, in preparation for the defense, rebuttal

2    or responsive experts.  This is deficient.  Your Honor set a

3    deadline of February 25.  They failed to meet that deadline.

4         MS. PENZA:  We disagree with the second point.  So I

5    don't believe -- I believe there is more than sufficient notice

6    for defense counsel to find experts to rebut those points, if

7    such experts exist.  I'm not clear that they do, but if they

8    do.

9         THE COURT:  You mean there is only one expert on the

10   particular subject and you got him?

11        MS. PENZA:  No, but what I'm saying is the fact of

12   physiological effects of, for example, severe calorie deficits

13   and severe lack of sleep.

14        THE COURT:  Lack of sleep has been my problem; calorie

15   deficits have not.  I could be an expert on lack of sleep.

16        What I'm saying is you need to get this -- there are

17   experts out there, and it's, you know, you are not hunting for

18   truffles in the forest here.  They are out there, and just get

19   them; and, if the defense wants to object, you will have an

20   opportunity to object as to timeliness or anything else you

21   want to object to.  But let's just get it done.

22        I'm trying to move this along, but I can't move it

23   along unless you are cooperating and providing materials that

24   the defense needs to prepare its case.

25        MS. PENZA:  Your Honor, we absolutely will.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1          THE COURT:  All right.  Where was I?

2          Now, have the parties consulted about the dates to

3   produce the 3500 material, the witness lists, the exhibit

4   lists, and the other pretrial materials; and where are we on

5   the questions for the questionnaire for the panel?

6          MS. PENZA:  So taking the last one first, Your Honor,

7   since the last court appearance defense counsel represented

8   that they would provide the government with their initial

9   proposal.  We have not received that.  So that's where we stand

10  on that.

11          MR. AGNIFILO:  I think we will have them by next week,

12  in terms of the questions.

13          THE COURT:  Now, the way --

14          MS. CASSIDY:  We will have them by Monday.

15          THE COURT:  Okay.  Great.  Very good.

16          The way we are going to handle the initial jury

17  questionnaire session is that all of the defendants will be

18  present in the ceremonial courtroom, along with counsel.  All

19  of you will be introduced to the venire.  So that if anyone

20  recognizes any of you, they will be able to make note of it on

21  their questionnaire.

22          On the first day you will be there and on the second

23  day.  It's at 2 o'clock each day.  And then, after the second

24  meeting on Tuesday, we will have a status conference to go over

25  issues -- all right -- whatever issues are out there on

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1   April 9, all right, that I need to deal with and you need to

2   deal with.

3        Are there any questions about how that's -- oh, and

4   then the government is going to be responsible for printing up

5   copies of all the questionnaires and distributing them to

6   defense counsel.

7        And the following week -- and then at a certain

8   point -- hopefully by Thursday, by the 11th, I will have a list

9   of your strikes by consent for at least the first 150 potential

10  jurors; and, where you disagree, you will indicate where you

11  disagree, and we will bring in the potential juror for an

12  interview.

13       The following Monday, we are going to start

14  questioning jurors, and we are going to move swiftly.  So I

15  will need proposed follow-up questions from both sides.  You

16  will know who the jurors are who are coming in.  We will take

17  20 in the morning and 20 in the afternoon and run through them

18  with your additional questions.

19       What I'm not sure how we are going to do is handle if

20  we have even more questions when we hear from the juror.  I'm

21  going to take them one at a time.  So the answers by one juror

22  don't affect another juror.

23       I think a big issue is going to be in this case, the

24  issue that's already surfaced after the El Chapo case, which is

25  that some people just don't listen to judges who tell them not

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    to access the Internet or blogs or Twitter feeds or whatever

2    source of information people get in lieu of reading the

3    newspapers.  I'm not sure anyone is reading newspapers.

4             So I mean this is a real issue, and I'm going to come

5    down very hard on the jurors about this, by the way.  I'm going

6    to inform the jurors -- and I will let you know beforehand what

7    I'm going to say -- I'm going to inform them that violating a

8    court order, having taken an oath to follow the law, is an

9    offense, if proven, that can result in prison time.

10            I'm just going to tell them that this, you know, we

11   are here to do justice.  We are not here to spread gossip about

12   these individuals who are on trial.  It's simply not fair to

13   them.  You wouldn't want it to happen to you, and we are not

14   going to have it happen to them.  So I'm going to just make

15   that very clear.

16            I'm also going to tell them that you are not snitching

17   if you tell the judge that somebody else in the jury room is

18   busy bringing in extraneous information.

19            So I know how difficult it's going to be, but I will

20   make a referral to U.S. Attorney, if I have to, in this case.

21   Somebody has got to do something about this; and, you know,

22   when they set up jury trials in criminal cases under the U.S.

23   Constitution, we didn't have these instruments that we have

24   today that can undermine the jury system.  We are going to do

25   whatever we can in a high-profile case like this to make the

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    point.

2            So if you have any suggestions on how we do that, you

3    let me know.  Write me a letter.  All right.

4            MS. PENZA:  Thank you, Your Honor.

5            THE COURT:  All right.

6            MS. PENZA:  Then, as to the other questions, when Your

7    Honor first asked us about 3500 material in court, we initially

8    proposed two weeks in advance.  We met with -- we met with our

9    co-counsel.  We conferred.  They had suggested a month in

10    advance.  We agreed to provide it three weeks in advance.  So

11    on April 8 we would begin producing 3500 material.

12            We now hear that that is insufficient in terms of

13    their position, but our position is that that is the correct

14    date for 3500 disclosure; and then, for all remaining

15    deadlines, including the proposed jury charge, exchange of

16    witness lists, exchange of exhibit lists, the government's

17    proposal is April 15 for those.

18            MR. AGNIFILO:  So we think a more appropriate date for

19    3500 and the government's exhibits is April 1st.  Not just

20    because it's April Fool's Days but because we think we need

21    four full weeks before openings.

22            We appreciate that -- the government did initially say

23    two weeks.  We said a month; they said three weeks.  I

24    appreciate it.  I don't want to look a gift horse in the

25    mouth -- I'm going with horse analogies today -- but I think

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    the size of the case merits, and the complexity of the case and

2    the number of charges, warrants us getting this information

3    four weeks ahead of time, especially if we are going -- there

4    is still a lot of shifting sands.

5         I mean, we still don't have -- expert disclosures have

6    been discussed.  We are just not where we feel we want to be on

7    the defense side in terms of what we think the government's

8    obligations are, not just in terms of expert disclosures; but,

9    I think, in a case like this, especially if it's going to be on

10   a rolling basis, which is their proposal, a rolling basis,

11   starting three weeks before trial.  No one really knows what

12   that means, except you start getting it three weeks before

13   trial.

14        I would like to see it four weeks before trial and not

15   necessarily on a rolling basis.  I would like to get the 3500

16   in total.  If there is more 3500, if they couldn't get it all

17   together, we are not going to make a problem about it; but I

18   think April 1st is an appropriate date, given all of the other

19   aspects of this case, and that is our request.  We couldn't get

20   together on that.  We have spoken, and we are still a week

21   apart.

22        THE COURT:  All right.  I will consider it.

23        We have an application that I have just received today

24   from the government.  Do you want to describe it briefly?  I

25   don't know that the defense lawyers have received it or whether

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    they read it.

2          MS. PENZA:  Yes.  Other than -- so we have made an

3    application to extend the response date for the replies to

4    their oppositions to our motion to admit enterprise evidence

5    from March 5 to March 11.  We contacted defense counsel

6    yesterday morning about that, and we received no response as to

7    their position.  Given the complexity of the opposition, and

8    the fact that we have six oppositions -- admittedly, some are

9    shorter than others -- we believe that's an appropriate time

10   for us to reply.

11         MR. AGNIFILO:  We don't object.

12         THE COURT:  All right.  The motion is granted --

13         MS. PENZA:  Thank you.

14         THE COURT:  -- without objection.

15         MS. PENZA:  And also to file a 25-page memorandum.

16         THE COURT:  That's fine.

17         MS. PENZA:  Thank you, Your Honor.

18         THE COURT:  I notice that, you know, Mr. Geragos is

19   now representing Ms. Bronfman, and Ms. Geragos is representing

20   Mr. Raniere.  So it's good to have families together in the

21   room.  I understand that.

22         Does the government have any issues with that, that

23   they would like me to inquire about?

24         MS. PENZA:  Your Honor, we obviously only received

25   Mr. Geragos' pro hac vice application yesterday.  That was the

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1    first we heard of his joining the case.

2            We are considering those issues.  We would like an

3    opportunity to speak to counsel regarding potential issues.  We

4    believe that there may be certain things that we need to raise

5    before Your Honor, but first we would like the opportunity to

6    speak to defense counsel about it.

7            MR. GERAGOS:  I have been adverse to my brother, who I

8    have known for a lot longer than my daughter.

9            THE COURT:  Well, that's normal.  I have a brother

10   too.  Go ahead.

11           MR. GERAGOS:  If you have one, you get it.

12           I will state that I had assumed that somebody may

13   raise something, but anybody who knows my daughter Teny or has

14   had any dealings with her knows that she has her own mind and I

15   have mine, and we often are adverse to one another with a great

16   deal of --

17           THE COURT:  You are on the same team, in a sense, but,

18   then again, you are representing different defendants; and I

19   have to be careful about that in terms of the rights of your

20   client and the rights of Mr. Raniere.

21           MR. GERAGOS:  I can also state this is the first time

22   I have laid eyes on Mr. Raniere.  I have never spoken to

23   Mr. Raniere and have no connection.  In fact, I have a more

24   longstanding connection with Ms. Bronfman's family than I do

25   with anybody else at this table, other than my daughter.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1          THE COURT:  Okay.  Thank you.  Why don't you let me

2     know by Friday.

3          MS. PENZA:  Yes, Your Honor.

4          THE COURT:  So we can move that along, if we need to

5     make any appropriate inquiry.

6          MS. PENZA:  Yes, Your Honor.

7          THE COURT:  Okay.  Thank you.  Yes?

8          MS. HARRIS:  Your Honor, just very briefly, in terms

9     of the scheduling of 3500, I note, I believe Your Honor just

10    reiterated a date for in limine motions that was either April 5

11    or April 8.  Right?  April 5, Your Honor.

12         So I know there are in limine motions we can make

13    without the benefit of 3500 or some identification of the

14    exhibits; but I am concerned, of course, if the discovery is

15    voluminous and once everything is brought into focus by the

16    exhibit list and 3500, I just know our in limine motions are

17    going to be much more focused.

18         THE COURT:  You can make an application at any time on

19    that.

20         MS. HARRIS:  So, in thinking about the scheduling, I

21    would ask Your Honor consider the relationship between the

22    in limine motions and the 3500 material.

23         THE COURT:  Thank you.  I will consider that.  Thank

24    you.

25         MR. AGNIFILO:  Just one second, judge.  I'm sorry.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1           (Pause.)

2           MR. AGNIFILO:  We are good, judge.  Thank you.

3           THE COURT:  Anything else from the government?

4           MS. PENZA:  Nothing further, Your Honor.

5           THE COURT:  Anything else from the defense?

6           MR. AGNIFILO:  Nothing.

7           MR. GERAGOS:  No, Your Honor.

8           THE COURT:  In terms of a next meeting, I set up a

9   meeting for the 9th of April.  That's a month away.  I'm very

10  concerned that we shouldn't be waiting until then.  Any

11  suggestions from the parties?

12          MR. GERAGOS:  Your Honor, it sounded like Your Honor

13  was going to rule on Mr. Agnifilo's request to move up the 3500

14  disclosures.  If Your Honor does that, could Your Honor set a

15  date sometime close to that so that we can, as a housekeeping

16  measure, if we get it or don't get it or if we have got a

17  problem with what's been turned over?

18          THE COURT:  Oh, you can always ask for a status

19  conference.  I just want to make sure that, you know, we move

20  some of these issues along as a general proposition.

21          MS. PENZA:  The government would suggest that we have

22  a status conference the week of the 18th.

23          MR. GERAGOS:  I was going to suggest the 18th as well.

24          MS. PENZA:  Perfect.

25          MR. GERAGOS:  So there you go.

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Raniere, et al.

1          MS. PENZA:  As long as it's okay with the court, of

2     course.

3          MR. GERAGOS:  Yes, March 18.

4          THE COURT:  March 18 at 11:00 a.m.

5          MR. AGNIFILO:  Very good.  Thank you, judge.

6          THE COURT:  All right.  And on the issue of speedy

7     trial time?

8          MS. PENZA:  Yes, Your Honor.  We would ask that the

9     speedy trial continue to be excluded in the interests of

10    justice, given the complex case designation and the fact that

11    there are pending motions before the court.

12         THE COURT:  Any objections?

13         MR. AGNIFILO:  No.

14         MS. HARRIS:  No objection.

15         MR. GERAGOS:  No objection.

16         THE COURT:  All right.  No objection.  We will see you

17    at 11:00 a.m. on March 18.  Thank you very much, everyone.

18         MS. PENZA:  Thank you, Your Honor.

19         (End of proceedings.)

20                         o O o

21

22    Certified to be a true and accurate transcript.
      /s/ Michele Nardone
23    MICHELE NARDONE, CSR -- Official Court Reporter

24

25