1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,        : 18-CR-00204(NGG)
4                                   :
                                    :
5                                   :
        -against-                   : United States Courthouse
6                                   : Brooklyn, New York
                                    :
7                                   :
                                    : Monday, January 28, 2019
8  KEITH RANIERE, ALLISON MACK,     : 11:00 a.m.
   CLARE BRONFMAN, KATHY            :
9  RUSSELL, LAUREN SALZMAN and      :
   NANCY SALZMAN,                   :
10                                  :
           Defendants.
11
   - - - - - - - - - - - - - - X
12

13      TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
         BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
14            UNITED STATES SENIOR DISTRICT JUDGE

15                 A P P E A R A N C E S :

16

17 For the Government:  RICHARD P. DONOGHUE, ESQ.
                        United States Attorney
18                      Eastern District of New York
                        271 Cadman Plaza East
19                      Brooklyn, New York 11201
                   BY:  MOIRA KIM PENZA, ESQ.
20                      TANYA HAJJAR, ESQ.
                        KARIN K. ORENSTEIN, ESQ.
21                      MARK J. LESKO, ESQ.
                        Assistant United States Attorneys
22

23 For the Defendants:  BRAFMAN & ASSOCIATES, P.C.
                        For Keith Raniere
24                      767 Third Avenue
                        New York, New York 10017
25                  BY: MARC A. AGNIFILO, ESQ.
                        TENY ROSE GERAGOS, ESQ.

                SAM    OCR    RMR    CRR    RPR

2

A P P E A R A N C E S:   (Continued)


For the Defendants:

                        DerOHANNESIAN & DerOHANNESIAN
                        For Keith Raniere
                           677 Broadway
                           Suite 707
                           Albany, New York 12207
                        BY:Paul DerOhannesian, II, ESQ.


                        KOBRE & KIM, LLP
                        For Allison Mack
                           800 Third Avenue
                           New York, New York 10022
                        BY:WILLIAM F. McGOVERN, ESQ.


                        HAFETZ & NECHELES, LLP
                        For Clare Bronfman
                           60 East 42nd Street
                           36th Floor
                           New York, New York 10165
                        BY:SUSAN R. NECHELES, ESQ.
                           KATHLEEN E. CASSIDY, ESQ.


                        SHER TREMONTE, LLP
                        For Kathy Russell
                           90 Broad Street
                           23rd Floor
                           New York, New York 10004
                        BY:JUSTINE A. HARRIS, ESQ.
                           AMANDA RAVICH, ESQ.


                        QUARLES & BRADY, LLP
                        For Lauren Salzman
                           Two North Central Avenue
                           Phoenix, Arizona 85004
                        BY:HECTOR DIAZ, ESQ.

```
                         Proceedings                        3


 1


 2           A P P E A R A N C E S:   (Continued)

 3
                     ROTHMAN, SCHNEIDER, SOLOWAY & STERN, P.C.
 4                   For Nancy Salzman
                        100 Lafayette Street
 5                      Suite 501
                        New York, New York 10013
 6                   BY:ROBERT SOLOWAY, ESQ.


 7


 8

 9   Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
                       Official Court Reporter
10                     E-mail:  SMaceRPR@gmail.com
     Proceedings recorded by computerized stenography.  Transcript
11   produced by Computer-aided Transcription.

12


13


14


15


16                           ooo0ooo

17


18                       (In open court.)

19       (Judge NICHOLAS G. GARAUFIS enters the courtroom.)

20           THE COURT:  Good morning.  You may be seated in the

21   back.

22           Case appearances.

23           MS. PENZA:  Moira Kim Penza, Tanya Hajjar, Mark

24   Lesko and Karin Orenstein for the United States.

25           Good morning, Your Honor.
```

```
                          Proceedings                      4

 1              THE COURT:  And what about Mr. Trowel?

 2              MS. PENZA:  I believe Mr. Trowel is back there

 3    (indicating).

 4              MR. TROWEL:  Good morning, Your Honor.

 5              THE COURT:  There is room here too, you know.

 6              All right, thank you.

 7              Yes.

 8              MR. AGNIFILO:  Yes, Your Honor.  Marc --

 9              THE COURT:  Wait.  Let's wait for your client.

10              MR. AGNIFILO:  Yes.

11              (Defendant enters the courtroom.)

12              MR. AGNIFILO:  Thank you, Your Honor.

13              THE COURT:  Go ahead.

14              MR. AGNIFILO:  Yes, Marc Agnifilo, Teny Geragos,

15    Paul DerOhannesian for Keith Raniere, who is now present in

16    the courtroom.

17              THE COURT:  Thank you.

18              MR. AGNIFILO:  Thank you.

19              THE COURT:  Good morning, sir.

20              MR. DIAZ:  Good morning, Your Honor.  Hector Diaz

21    for Lauren Salzman, who is seated here.

22              THE COURT:  Good morning, Ms. Salzman.

23              MR. McGOVERN:  Bill McGovern for Allison Mack who is

24    here next to me.

25              THE COURT:  Good morning, Ms. Mack.
```

Proceedings                                                  5

1            DEFENDANT ALLISON MACK:  Good morning.

2            MR. SOLOWAY:  Good morning, Your Honor, Robert

3    Soloway and also Rachel Perillo from my office, an associate,

4    here together representing be Nancy Salzman.

5            THE COURT:  Hi, Ms. Salzman.

6            DEFENDANT NANCY SALZMAN:  Hi, Your Honor.

7            THE COURT:  Where are you?  It's nice to see you

8    here.  I hope you are feeling better.

9            DEFENDANT NANCY SALZMAN:  Thank you.

10           MS. HARRIS:  Good morning, Your Honor, Justine

11   Harris and Amanda Ravich for Kathy Russell, who is on my left.

12           THE COURT:  Good morning, Ms. Russell.

13           MS. NECHELES:  Good morning, Your Honor.  Susan

14   Necheles and Kate Cassidy for Ms. Bronfman.

15           THE COURT:  Thank you.  And good morning, ma'am.

16           Please be seated.

17           MS. NECHELES:  Thank you.

18           THE COURT:  The reason for this meeting is for us to

19   start dealing with the issues raised by the existence of the

20   irrevocable trust that was brought to the Court's attention.

21   And the Court has reviewed the initial filing back in, I think

22   it was in December, by Mr. Agnifilo, but the subsequent filing

23   that was provided at the Court's request contains the two

24   documents that the Court wants to discuss with you today.

25           There is what I would call the trust indenture and,

Proceedings                                          6

1    I think, four exhibits or schedules that are attached to that

2    indenture.  And then there is the declaration that was

3    submitted to the Court with a cover letter from Mr. Agnifilo

4    on January 14th.

5            The reason the Court is, obviously, concerned is

6    that the declaration raises some issues regarding

7    representation of five of the defendants, other than the

8    trust's grantor.  And so before we go into the subject of a

9    Curcio hearing for these defendants, according to the view

10   preliminarily that the trust indenture and the declaration

11   should be made available, perhaps with redactions, appropriate

12   redactions that we can raise here today or that you can raise

13   in submissions, which might have some problems for the

14   defense.

15           And I am just wondering, have all the defendants and

16   their counsel seen the trust indenture and the letter and the

17   declaration from the attorney for the trust?

18           MR. AGNIFILO:  We've seen it.

19           MS. HARRIS:  Your Honor --

20           THE COURT:  I'm sorry, the trust document that

21   created the trust.

22           MS. HARRIS:  Your Honor, at least --

23           THE COURT:  Well, state your name.

24           MS. HARRIS:  Sure, Justine Harris for Ms. Russell.

25           We -- a number of the attorneys and I, I don't know

Proceedings                                    7

1   if Mr. Agnifilo was in a different situation, but we do not

2   have the letter with the indenture that was submitted, the

3   actual trust document that was submitted, I believe ex parte

4   and directly by counsel for the trust to the Court.  We have

5   not ever seen those documents.

6            THE COURT:  Well, it is not a secret, I do not

7   think, that each of you has, each set of attorneys has a

8   Retainer Agreement with his or her client, right?

9            MS. HARRIS:  Correct.

10            THE COURT:  I mean that is implicit in what is set

11   forth in the trust document.

12            So, cutting to the chase, the issue is if there is a

13   certain amount of money that was placed in the trust,

14   primarily by Ms. Bronfman, and that is a sum that I am not

15   going to disclose here, but there is a sum of money, and there

16   is no guarantee, there isn't any representation that any

17   further funds will be made available.  It is also clear from

18   what I have seen that a good portion of that, those funds,

19   have already been expended in connection with the

20   representation of your clients.  Leaving a certain amount in

21   that corpus for further legal fees.  Which raises a real issue

22   here as to when those funds have been expended, which could be

23   any time in the near future, what happens then?

24            And that is a real issue for the Court because we

25   are going to go to trial at the end of April and I am going to

Proceedings                                            8

1    expect that the people who are representing these defendants

2    are going to be in a position to continue representing the

3    defendants.  And if there is some reason why when the funds

4    are no longer available, if there is a reason why the

5    attorneys would not be able to continue, then I need to know

6    that now.

7            In other words, and this is something that you need

8    to discuss with your clients, that in the event that there are

9    no longer funds available in this irrevocable trust and there

10   are no further funds made available, which is entirely

11   possible -- I cannot read minds, but I also have reason to

12   believe there may not be -- then what happens with regard to

13   the representation of these defendants?

14           This is a question that has got to be answered soon

15   because we are two months from trial, basically two months

16   from trial, and if I need to appoint counsel for the

17   defendants who would not be able to pay additional legal fees,

18   then I want to be able to do that soon so that we can go ahead

19   with this trial on time.  These are real life issues.

20           I also do not know, and do not believe, at least

21   based on the caselaw that I have seen, that the contents of

22   this trust document and the declaration from the attorney for

23   the trustee, Mr. James Q. Walker, would be subject to the

24   lawyer/client privilege, at least not under Second Circuit

25   caselaw.

Proceedings                                              9

1           So these are some of the issues that we need to

2    address.  And in order to address them and in order for me to

3    hear from the Government about any additional questions for

4    Curcio hearings, it is my belief that the Government should

5    have access to the trust indenture and the declaration from

6    Mr. Walker, subject to any redactions that the defense lawyers

7    properly bring to the Court's attention.  Because I do not

8    want to provide anything to the Government that might

9    influence or affect the rights of the defendants with respect

10   to some of the materials, perhaps, primarily in Mr. Walker's

11   attachments.

12           So that is where we are.  And I wanted you all here

13   at the same time with your clients to hear this from me

14   because we are going to need to have Curcio hearings.  I am

15   going to need to ask questions.  You are going to need to, the

16   defense lawyers are going to need to discuss with their

17   clients the unusual structure of your representation or, at

18   least, the arrangements that you have with your clients,

19   taking into account the trust.  And so that is where we are at

20   the moment.  It is a little bit complicated.  I have never run

21   across this before in 18 years, but I want you to have the

22   opportunity to think about this and to make whatever

23   submissions, presentations, that you think would be

24   appropriate, but I also do not want to tie the hands of the

25   Government so that they are in the dark about some of the

Proceedings                                          10

1   critical considerations, in terms of how the trust is being

2   structured and the circumstances of the financing of this

3   case.

4               MS. NECHELES:  Your Honor, could I just make ---

5               THE COURT:  Of course.

6               MS. NECHELES:  Thank you, Your Honor.

7               Your Honor, I did not set up this trust.

8   Ms. Bronfman was counseled by people before me, before I was

9   representing her.  But I think the structure of the trust and

10  the intent of the trust was to try to avoid some of the

11  problems that usually come up when one defendant is paying for

12  legal fees for other people.  It was an attempt to put money

13  into the hands of a trustee and take any control away from

14  Ms. Bronfman, so that people could make decisions on their own

15  and that there would be no way for her to influence other

16  people's legal strategies.  The people are being paid and she

17  has no control over whether they are paid.

18              They are -- the intent was so that nobody here, no

19  defendant could control any other defendant's legal strategy

20  and there wouldn't be that type of pressure.  And I believe

21  that, I believe the Government already has the indenture.  I

22  believe they know this.  They've spoken with the trustee

23  themselves.  They've interviewed the trustee.  I don't think

24  that any of this is really news to them.  I think that they --

25  my understanding is that they know, they've spoken with the

Proceedings                                                11

1    trustee and are aware of the structure.

2          And so I think at this time, as Your Honor has said,

3    you know, Your Honor is aware of the restrictions on

4    Ms. Bronfman's trust, you know, her -- a separate trust, you

5    know, where her assets are mainly held.  And that she does not

6    have the ability to control that and that money will not be

7    going and she doesn't really have liquid funds.  So there is

8    no intent for more money to be going into this trust at this

9    time.  And because of that, we think that many of the

10   questions that are in the Government's proposed extremely long

11   Curcio are wrong and improper, but I just wanted to explain to

12   the Court how we've seen it and how there was an intent, and I

13   think a successful attempt, to structure this in a way so that

14   nobody could control each other's legal strategy.

15         THE COURT:  All right, thank you.

16         I understand what you have said, and it is

17   consistent with what I read in these documents, and I am glad

18   you raised in open court the fact that there appears to be no

19   plan or no intention or, perhaps, no ability to augment the

20   sum of money that was placed in the trust.

21         But I also understand that up to this point the vast

22   majority of the funds have already been expended by the

23   trustee.  So, where we are is that two months before trial,

24   with so much more to do, there is going to come a point when

25   there are no further funds available to pay anyone's attorneys

Proceedings                                           12

1    of the five additional defendants.  All right?

2          So, that raises the issue for those defendants and

3    their counsel of whether, and I do not have and I do not seek

4    the information or the documents, the retainer agreements,

5    there may come a point where unless the other attorneys agree

6    that they are going to see this through to the end,

7    irrespective of the unavailability of further funds from the

8    trust, that the defendants who may be indigent are going to

9    ask for appointed counsel, which raises then the issue of

10   whether this trial will begin on April 29th, which the Court

11   fully expects it will.

12         And that is why I am bringing you here today because

13   I want everyone to hear this and know it, and when we get to

14   the Curcio hearing I am going to be asking counsel about that

15   very issue.

16         I am not going to ask you --

17         MS. NECHELES:  Thank you.

18         THE COURT:  -- because you represent Ms. Bronfman

19   and I assume you have whatever arrangements you have with her,

20   apart from this irrevocable trust.

21         MS. NECHELES:  Yes.  And I understand Your Honor is

22   dealing with a totally separate issue.  I just wanted to deal

23   with that one issue and be clear on that.  But I understand

24   that Your Honor is raising a different issue.

25         THE COURT:  And another issue, a sidebar issue, is

Proceedings                                          13

1  that the trust document also contains the names of potential

2  witnesses who might be provided funds for their attorneys in

3  order to represent them.

4           Now, I don't know that the Government has that list.

5  If it does not have the list, then the question is should it

6  have the list of those potential witnesses because for the

7  obvious reasons.

8           MS. NECHELES:  And, Your Honor, we would be opposed

9  to giving -- you know, if the Government does not have this,

10  we would be opposed to giving it.

11           THE COURT:  Giving what?

12           MS. NECHELES:  Giving any of this to the Government,

13  we don't think it's proper discovery for them to be obtaining

14  any of this.  It is not -- it is not a grand jury proceeding.

15           We want Your Honor to have all the information that

16  Your Honor needs to have for -- to understand the structure

17  that was set up and understand why there is no improper

18  influence on anybody; as the Second Circuit has required that

19  Your Honor look at these issues and make sure that you're

20  comfortable that there is no improper influence on any

21  defendant and that anybody has weighed whatever conflicts.

22           But we don't think it's proper for the Government to

23  somehow use this process, a Curcio process, as a discovery

24  method for the Government to obtain things that they may

25  consider evidence, using as evidence at trial.  We would be

Proceedings                                    14

1    opposed to that.

2              THE COURT:  Well, they have not asked me for

3    anything.

4              MS. NECHELES:  Okay.

5              THE COURT:  I am the one who is asking because I

6    have the concern to protect the rights of the other defendants

7    in the case where they have private counsel being paid by a

8    trust and the trust funds are about to run out in the near

9    term, and then that puts those defendants and their counsel in

10   the awkward position that I have already penciled in.  So,

11   that is really where I am.

12             I don't believe with respect to the payment of legal

13   fees that there is any Second Circuit caselaw that would

14   prohibit the Court from providing those kinds of documents to

15   the Government in order for the Court to have from the

16   Government a list of potential issues that need to be inquired

17   about in a Curcio setting.

18             But the reason I am doing all of this, not ordering

19   anything at this point, is I want you to understand the

20   difficulty that we have here.  And the extent to which you can

21   be helpful to me in structuring what we do, I would like you

22   to provide that kind of guidance.  That is the only reason we

23   are here today.

24             MS. NECHELES:  Yes, we appreciate that, Your Honor.

25             THE COURT:  Yes, Mr. Agnifilo.

Proceedings                                              15

1          MR. AGNIFILO:  Yes, thank you.

2          So I hear Your Honor having concerns in two

3    different areas.  There's the Curcio area, and we'll have that

4    hearing at the right time.

5          There is also a case management, and Your Honor

6    wants to know, quite frankly, are we all going to stay in the

7    case.  I believe the answer is we are all staying in the case.

8    I know I'm staying in the case.

9          THE COURT:  Well, then we're done with you, let's

10   move on.

11         MR. AGNIFILO:  Okay, that's good.  Thank you, Judge.

12         THE COURT:  I mean I am not asking you to answer

13   that question until you speak to your clients.  So I am not

14   asking for instant answers here, but what I am asking is that

15   you have a full discussion.

16         And you are in a different position from the other

17   defendants because you have an arrangement, apparently, that I

18   don't know if any of the other counsel have, in terms of being

19   paid for your retainer; right?

20         MR. AGNIFILO:  So, I don't know what the other

21   counsel.

22         THE COURT:  Well, neither do I.

23         MR. AGNIFILO:  Right, and neither do I.  And just so

24   it's clear, when Your Honor ordered that the indenture be

25   provided to the Court, I was acting really as just sort of a

                SAM      OCR      RMR      CRR      RPR

Proceedings                                          16

1    middleman.  I just gave it to the Court.

2          I had never seen it, the indenture, until Your Honor

3    ordered that it be provided to Your Honor.  When Your Honor

4    ordered that, I spoke to Mr. Walker, he provided it to me and

5    I provided it to you.  I didn't give it to any of the other

6    counsel because that -- Your Honor didn't order that.  And so

7    Walker put in motion exactly what the Court ordered.

8          Just very briefly as it concerns Raniere.  The money

9    is going to run out.  We are not going to get our whole trial

10   fee, we're not, and you're stuck with me anyway.  I mean I am

11   not going anywhere.  I am seeing this through to the end of

12   trial and whatever happens absent an appeal.

13         THE COURT:  Well, let me ask you this, because I

14   understand that the structure of your fee is what it is:

15         Has your entire fee been paid by this trust or is

16   any part of the balance going to be -- are you going to be

17   requesting the balance of your fee out of what is left?

18         And you know what is left in the trust because you

19   sent me the letter, right?

20         MR. AGNIFILO:  Our whole fee has not been paid.

21         THE COURT:  It has not?

22         MR. AGNIFILO:  No.  Our whole pretrial fee has been

23   paid.  I don't expect that the trial fee will ever be paid in

24   full.  I expect that I am going to try the case without the

25   trial fee being paid.

SAM      OCR      RMR      CRR      RPR

Proceedings                                                    17

1         THE COURT:  Well, I will ask you that question at

2    the Curcio hearing.

3         MR. AGNIFILO:  Yes, but we will be prepared to

4    provide any information Your Honor wants.

5         THE COURT:  I mean there is only about, as of the

6    date of Mr. Walker's declaration, January 14th, without giving

7    precise amounts, I would say there is about 25 percent of the

8    total, or maybe a little more, that was placed in the trust by

9    Ms. Bronfman still remaining.  So, that is not a lot of

10   money --

11        MR. AGNIFILO:  Right.

12        THE COURT:  -- to pay counsel for five defendants.

13   And all of these counsel are privately retained and excellent

14   lawyers whose hourly rate is probably substantial.

15        MR. AGNIFILO:  So what I can say, and there's

16   certain things that we're, I think, as a group very happy to

17   discuss in open court.  There are certain things, and we

18   haven't gotten to any of those areas, where if Your Honor

19   wanted information on that, we'd be happy to give it to Your

20   Honor, but just to Your Honor.

21        But in terms of this, we've been dealing as a

22   defense group with this reality for months.  And we have known

23   for months that we all weren't going to be getting our full

24   pretrial and trial fees, or however they're structured.  We

25   knew we were going to have to take, you know, essentially a

Proceedings                                                    18

1   haircut, which is how we've been viewing it.  And I think

2   that's true for everybody.

3          I will let everybody answer their own questions in

4   their own time, but for us, you know, we're not -- we're in

5   this trial until the end and if we don't get paid our full

6   trial tree, we don't get paid our full trial fee.  It wouldn't

7   be the first time that happened.  So, from Mr. Raniere's

8   standpoint, that's where we are.

9          THE COURT:  Thank you.

10         Well, before I turn to the other defendants, the

11  Government has not made any kind of request, so now the

12  Government knows what the Court has on an ex parte basis,

13  understands the Court's position and the Court's concern.

14         Before we go to the Curcio hearings stage, is there

15  anything that the Government would like to raise?  Is there

16  anything that the Government believes it is entitled to or

17  would need in order to prepare additional questions for a

18  Curcio hearing?

19         Where is the Government on all of this?

20         MS. PENZA:  Your Honor, as we set forth in our

21  initial Curcio letter, we did -- we did contact Mr. Walker,

22  who I believe is the same person who submitted the letter to

23  Your Honor.  We were given very minimal information.

24         And just to set the record straight, we do not have

25  a copy of the indenture, even though Ms. Necheles seems to

Proceedings                                                    19

1  assume that we do.

2         So, Your Honor, we would appreciate the opportunity

3  to have whatever the Court deems in its discretion, that is

4  before the Court, so that we can advise on the Curcio issues

5  as we already have.  But, obviously, we are operating with a

6  lack of information at this point.

7         And, frankly, it is concerning to us even the way

8  this hearing is operating.  We have Mr. Agnifilo, again,

9  speaking for all of the defendants and --

10        THE COURT:  I am going to get to everybody else, and

11 I think I am going to get to them in a way that permits them

12 to look at the indenture, to look at Mr. Walker's declaration,

13 and then to provide in writing, ex parte to the Court, their

14 views on how the Court should proceed.

15        I am taking it one step at a time, but I need to

16 take the step, which is the reason why I called this meeting

17 for today so that we do not lose any time and so that the

18 Court has an understanding of what the position of the defense

19 counsel are, and that the defense counsel have an opportunity

20 to discuss this issue with their clients.  And I am glad all

21 the clients are here.  I appreciate that you are all here on

22 short notice.

23        So this is my thought process right now.  So, it is

24 good to know you have not seen -- the trust indenture does not

25 tell you very much.  It is a beautiful trust indenture and

Proceedings                                    20

1    drafted by some very capable lawyers, all right.  The only

2    part of the trust indenture that I think might be an issue for

3    the defense is the listing of certain law firms and certain

4    potential witnesses, which I am sure the defense,

5    Ms. Bronfman's defense, is not terribly anxious for the

6    Government to have in case you have not thought of any of them

7    before; but I would assume that that would be an objection,

8    and that is the kind of objection that I would take very

9    seriously.

10            But, go ahead.

11            MS. PENZA:  So, Your Honor, I think the Government

12   is in the position where we appreciate you giving -- that

13   you're going to give the defense an opportunity to weigh in

14   regarding the documents that are currently before the Court,

15   but we would appreciate the opportunity to review them and to

16   submit a supplemental letter depending on what those documents

17   show.

18            THE COURT:  All right, thank you.

19            MS. PENZA:  Thank you, Your Honor.

20            THE COURT:  Okay.

21            Mr. Buckley.

22            MR. McGOVERN:  Mr. McGovern.  Mr. Buckley is not

23   here today.

24            THE COURT:  Oh, Mr. McGovern.  How are you today?

25            MR. McGOVERN:  We appreciate Your Honor hearing more

Proceedings                                           21

1    fully your concerns, and we've read your January 9th order and

2    sort of figured that this is where it's going.

3            It's an issue that Ms. Mack and Sean Buckley and

4    myself have been aware of for some time and have spoken about

5    thoroughly.  I think the best -- we'd like to take up your

6    suggestion, which is to provide a submission to the Court that

7    answers specific questions you have about our fee arrangement

8    and our intentions to stay in the case.

9            THE COURT:  All right.

10           Ms. Harris.

11           MS. HARRIS:  Yes, Your Honor.

12           I just want to confer on behalf of Ms. Russell the

13   representations by my co-counsel, this has been an issue for

14   many months.  It's an issue that's been the subject of

15   discussion, both among the joint defense or among the defense

16   team and, in particular, with my client, but I do think these

17   questions are appropriately handled, the sort of specifics are

18   appropriately handled in the way Your Honor proposed with

19   respect to ex parte submissions on behalf of each -- each

20   individual client.

21           I will say that I do believe that in short order the

22   Court will have comfort as to what lies ahead, and, perhaps,

23   it will streamline the issues with the forthcoming Curcio

24   hearings.  There is always -- we can always hope, Your Honor.

25           THE COURT:  I have never had an attorney tell me

Proceedings                                    22

1   that the Court will have comfort, that's a new one, but thank

2   you.

3           MS. HARRIS:  I'm feeling optimistic.

4           THE COURT:  All right, thank you.

5           Mr. Diaz.

6           MR. DIAZ:  Yes, Your Honor.

7           Your Honor, we agree with the Court's proposal for

8   the future.  We agree with the Court's proposal for the

9   future, ex parte submissions.  I've had ample discussions with

10  Ms. Salzman about this issue, but we do think that the Court's

11  plan of future submissions ex parte makes sense.

12          THE COURT:  All right.

13          Mr. Soloway.

14          MR. SOLOWAY:  Hello, Your Honor.

15          THE COURT:  Hello.

16          MR. SOLOWAY:  So I join in what counsel has said.

17  Your Honor has given us the opportunity to, you know, make a

18  submission after consideration and consultation with our

19  client and we're prepared to do that and that sounds like a

20  good idea, Judge.  So, we are ready to move forward on that

21  basis.

22          THE COURT:  All right, so I am going to direct

23  Mr. Agnifilo to provide the trust document, including the four

24  attachments or schedules, and the declaration from Mr. Walker

25  to his counsel for the other defendants.  And I am going to

Proceedings                                                        23

1    set down Friday at 5 o'clock for ex parte submissions to the

2    Court as to questions that have been raised here today

3    regarding its dissemination, the dissemination of these

4    materials to the Government, and anything else that the

5    defense counsel wish to raise, including the question of

6    additional inquiries for the Curcio hearings.  This way we can

7    move along, and then I will decide what to do.

8              All right?

9              MS. NECHELES:  Your Honor, my understanding is you

10   are not asking me to put a submission in?

11             THE COURT:  Well, you have told me your views.  If

12   there is anything else, you are certainly welcome to make a

13   brief written submission, maybe just summarizing your views.

14   That might be helpful since I will have everything in writing

15   from other counsel.

16             MS. NECHELES:  All right, no problem.

17             THE COURT:  Okay?

18             MS. NECHELES:  Sure.

19             THE COURT:  Thank you.

20             MS. NECHELES:  Thank you.

21             THE COURT:  So, the next step will be that after I

22   have reviewed the submissions, I will decide how much, if any,

23   of the materials should be provided to the Government and give

24   the Government a deadline to submit further questions for the

25   Curcio hearings.  Then I will appoint Curcio counsel and

Proceedings                                                    24

1   schedule the hearings for early in February.  And Mr. Reccoppa

2   will be in touch with you to schedule your individual Curcio

3   hearings.  We are going to reach out to Curcio counsel and

4   move forward with that.

5           So any other questions about the Curcio process?

6           MR. AGNIFILO:  No.  Very clear, and thank you.

7           So, I will inform the trustee that the Court has

8   ordered that forthwith I shall provide --

9           THE COURT:  Yes, please do so.

10          MR. AGNIFILO:  Yes, I will do that.

11          THE COURT:  I assume that Mr. Walker and his client

12  will not have a problem with the defense seeing the these

13  documents.

14          MR. AGNIFILO:  Certainly, so long as -- if there's a

15  court order, there will be no problem.

16          THE COURT:  Well, it is so ordered.

17          MR. AGNIFILO:  Yes; thank you, Judge.

18          THE COURT:  All right.

19          I also had an application from Mr. Agnifilo in

20  connection with bail.  I think we just received a short

21  response from the Government.

22          MS. PENZA:  Yes, Your Honor.

23          THE COURT:  All right, I will review everything.

24          Is there something more you would like to say?

25          MR. AGNIFILO:  I --

Proceedings                                                25

1          THE COURT:  I have not reviewed it yet.

2          MR. AGNIFILO:  I know that, Judge, and I don't want

3     to put the cart before the horse.  I mean I would -- there's

4     two issues.  There's the due process issue, and then there's

5     the more standard renewing of bail application.

6          So I would love the chance to get in front of Your

7     Honor as soon as Your Honor has had a chance to read the

8     papers.

9          THE COURT:  Get in front of me?

10         MR. AGNIFILO:  Come back to court, come see you

11    again, come stand in my spot and talk to the Court the way I

12    do.

13         THE COURT:  Anything else from the Government for

14    today?

15         MS. PENZA:  No, Your Honor.

16         THE COURT:  Anything from any defense counsel?

17         Hearing nothing, let's all remember April 29th.

18         And let me ask the Government, has there been

19    progress on a questionnaire?

20         MS. PENZA:  We -- we just met with counsel this

21    morning on some additional -- some separate issues.  So we

22    expect that we will meet again with defense counsel and be

23    prepared to update the Court on that.

24         THE COURT:  I see.

25         MS. NECHELES:  Your Honor, we are drafting something

W. Name - direct/cross - Atty                    26

1  that we hope to get to the Government, at least a draft, very

2  soon so that we can have the discussions that Your Honor wants

3  us to have and we want to have.

4          THE COURT:  All right.

5          MS. NECHELES:  To be able, hopefully, to bring to

6  Your Honor a questionnaire that has mainly agreed upon things

7  and then whatever questions, you know, clearly identified as

8  disagreements.

9          THE COURT:  All right.

10         MR. AGNIFILO:  We hope that by the next court

11 appearance on the 6th we are going to have agreed upon dates

12 for things like 3500, experts, stuff like that.  So, if we

13 have any disagreements we'll let the Court know, but I think

14 we are going to agree on most of it.

15         THE COURT:  All right, very good.

16         I have no calendar the rest of the day, so if you

17 would like to sit here all afternoon and talk to each other,

18 be my guest.

19         All right, thank you very much.

20         MR. AGNIFILO:  Thank you, Judge.

21         MS. PENZA:  Thank you, Your Honor.

22         THE COURT:  Thank you very much.

23         (Matter adjourned.)

24

25

SAM     OCR     RMR     CRR     RPR

I certify the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
               /s/  Stacy A. Mace    January 29, 2019