UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

    Plaintiff,

        – against –       Docket No. 18-204 (S-1) (NGG) (VNS)

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN

    Defendants.

———————————————————————

## **MEMORANDUM OF LAW BY NON-PARTY NXIVM REGARDING DKT. 256**

Non-party NXIVM respectfully submits this memorandum of law in response to the Government's motion and memorandum of law with respect to the defendants' assertions of attorney-client privilege over certain written communications obtained by the Government as part of its ongoing investigation. The Government correctly states that NXIVM has asserted that an attorney-client privilege protects written communications between NXIVM representatives and various applicants for United States visas as well as written communications between NXIVM representatives and Ricardo Olmedo of Olmedo Gaxiola & Abogados ("Mr. Olmedo Gaxiola") and Diego Ruiz Durán of Bufete Ruiz Durán S.C. and formerly of CLG Abogados ("Mr. Durán"). However, as is set forth below, the Government is wrong that NXIVM cannot meet its burden of establishing any attorney-client privilege over these materials and is further wrong that the crime-fraud exception can be applied to overcome NXIVM's assertion of attorney-client privilege.

1

## LAW AND ARGUMENT

### I.  THE CRIME-FRAUD EXCEPTION IS INAPPLICABLE

As a preliminary matter, NXIVM notes that NXIVM does not possess the documents that were seized by the Government pursuant to search warrants even though many of these documents may be subject to a valid claim of privilege by NXIVM. We are thus hampered in our ability to review the documents referenced by the Government and respond to its claims regarding NXIVM's attorney-client privilege. The Government's motion is therefore premature, and we ask the Court to defer these proceedings until NXIVM is provided with an opportunity to access to documents that are the subject of the Government's memorandum. In the interim, and in the interest of protecting its rights, NXIVM continues to assert the attorney-client privilege over any documents that may be protected by a privilege that belongs to NXIVM or its affiliates.

### A. Legal Standard for Establishing the Crime-Fraud Exception

In the Second Circuit, application of the crime-fraud exception requires a party to "demonstrate that there is probable cause to believe a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *United States v. Richard Roe, Inc. ("Roe I")*, 68 F.3d 38, 40 (2d Cir. 1995). "Probable cause" means "a reasonable basis for believing that the objective was fraudulent." *Id*.

Courts have exercised their discretion to decline to apply the exception, particularly where it appears that it would unduly invade the attorney-client privilege or "tilt the playing field at an early stage of litigation." *United States v. Richard Roe, Inc.,* 168 F.3d 69, 71 (2d Cir. 1999) ("*Roe II*"). Indeed, given the "critical role" that "the attorney-client privilege and work product immunity

2

play … in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford." *Id.*

In the Eastern District "[t]here are two separate probable cause showings required to invoke the crime/fraud exception: (1) probable cause to believe that a fraud or crime has been perpetrated, and (2) probable cause to believe that the communications at issue were in furtherance of and intended to facilitate the fraud or crime." *Aiossa v. Bank of Am., N.A.,* No. CV 10-01275 (JS) (ETB), 2011 U.S. Dist. LEXIS 102207, at *17 (E.D.N.Y. Sep. 12, 2011). Standing alone, evidence that the client communicated with counsel while the client was engaged in criminal activity or a suspicion of an ongoing illegal or fraudulent enterprise, is not sufficient to establish a prima facie case. *In re Grand Jury Matter #3*, 847 F.3d 157 (3d Cir. 2017); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988).

For the crime-fraud exception to apply, the Government must provide particularized evidence that *each* challenged communication was made *in furtherance* of the crime or fraud". *In re 650 Fifth Ave.,* No. 08-cv-10934 (KBF), 2013 WL 3863866 (S.D.N.Y. July 25, 2013) (emphasis in original). It is not enough that the communications related to the crime or fraud. *U.S. v. White*, 887 F.2d 267, 271, 28 Fed. R. Evid. Serv. 1486 (D.C. Cir. 1989); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34, 21 Fed. R. Evid. Serv. 616 (2d Cir. 1986). It does not apply to communications concerning past criminal or fraudulent conduct. *U.S. v. Zolin*, 491 U.S. 554, 562, 563, 109 S. Ct. 2619, 105 L. Ed. 2d 469, 27 Fed. R. Evid. Serv. 833 (1989). Similarly, it does not apply to repetition and documentation of earlier communications even though the earlier communications may themselves be subject to the crime-fraud exception. *In re Federal Grand Jury Proceedings, 89-10 (MIA),* 938 F.2d 1578, 1582, 33 Fed. R. Evid. Serv. 1524 (11th Cir. 1991).

The crime-fraud exception cannot apply unless there is a clear showing that the purpose and intent of the communication at issue was to further a crime; it is not sufficient that the communication be simply about the subject matter of a criminal investigation or charge. *See, e.g., In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d at 34 (reversing compulsion order for failure "to show the requisite purposeful nexus"); *In re Grand Jury 1983*, 731 F.2d at 1039 (the crime or fraud must "have been the objective of the client's communication"); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) ("[t]o subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act"); *Aiossa v. Bank of Am., N.A.,* No. 10-cv-01275, 2011 WL 4026902, at *9 (E.D.N.Y. Sept. 12, 2011) (declining to apply crime-fraud exception where there was no showing "that the objective of these communications was the perpetration of a fraud"); *Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351, 361 (E.D.N.Y. 2009) (declining to apply crime-fraud exception because "there is no indication here that [defendant] solicited counsel's assistance in order to disguise criminal, fraudulent, or tortious conduct," and collecting cases where the exception applied because "an attorney's assistance was sought to perpetrate a crime or fraud" (emphases added)); *In re: Gen. Motors LLC,* No. 14-mc-2543 (JMF), 2015 WL 7574460, at *6-7 (S.D.N.Y. Nov. 25, 2015) (noting "important distinction between effect and intent" in determining applicability of the crime-fraud exception, and refusing to apply exception because, although privileged communications "may well have contributed to the delay in public disclosure of the ignition switch defect," there was no evidence that the "intent" of the communications was to facilitate criminality or fraud); *In re MarketXT Holdings Corp.*, No. 04-12078, 2009 WL 7216076, at *3 (Bankr. S.D.N.Y. Mar. 4, 2009) ("The question before the Court is whether the client consulted the attorney for the purpose of furthering a crime or fraud, and the issue is the client's state of mind.")).

"Instead, confidential communications must be *in furtherance of the criminal or fraudulent conduct* for the crime-fraud exception to apply." *United States v. Stewart,* No. 03-cr-717 (MGC), 2003 WL 23024461, at *2 (S.D.N.Y. Dec. 29, 2003) (citing *Roe I*, 68 F.3d at 40) (emphasis added). "If the law were otherwise, every defendant accused of a crime . . . would lose the protection of the attorney-client privilege with respect to prior statements to his lawyer concerning the same subject matter." *Id*. Accordingly, "[a]lthough an indictment may provide probable cause to believe that the crime charged was committed, an indictment, standing alone, does not provide probable cause to believe that [communications between the charged individual and his or her] lawyers were in furtherance of the conduct charged in the [i]ndictment." *Id*.

### B. The Government Has Failed to Establish the Applicability of the Crime-Fraud Exception

The Government has not – and cannot – meet its burden to invoke the crime-fraud exception here. Because the attorney-client privilege is "of crucial importance to our jurisprudence . . . its derogation is not to be taken lightly". *In re St. Johnsbury Trucking Co*., 176 B.R. 122, 125 (S.D.N.Y. 1994). Because of its well-recognized importance, the protections of the attorney-client privilege may be overcome by the crime-fraud exception only under rare circumstances. As shown below, those circumstances do not exist here.

In its memorandum, the Government makes a generalized claim that the crime-fraud exception applies to the emails with the Mexico attorneys and NXIVM cannot assert privilege over those communications due to the crime-fraud exception because the communications are attempts to contact victims in an effort to keep them from "disclosing the existence of DOS and from reporting their experiences to law enforcement" (Government's memorandum at 27). The Government has failed to meet its burden in establishing the crime-fraud exception because: (a) the Government takes a broad approach to probable cause and fails to meet its burden; and (b) the

5

Government utterly ignores the second part of the crime-fraud analysis, which requires explaining how each communication is in furtherance of the purported crime or fraud and thus fails to analyze each communication it believes the crime-fraud exception applies to per the applicable legal standard. Further, as noted above, NXIVM's attorneys have not been privy to the communications at issue in order to make privilege determinations, and the Government has failed to disclose all of the communications in its motion and memorandum for determinations.

NXIVM properly asserted privilege over the communications with Mr. Olmedo Gaxiola and Mr. Durán. The attorney-client is a bedrock principle of our legal system. It exists so that lawyers and their clients can freely share information necessary to obtain and provide legal advice without the fear that some third party will gain access to those private conversations. While communications with a lawyer in furtherance of a crime or fraud are not privileged, the so-called crime-fraud exception is "narrow and precise," and applies only where the Government can demonstrate probable cause to believe that *specific* communications with a lawyer were in *furtherance* of a crime or fraud. As discussed herein, the Government has failed to do so.

  1. *The Government's Approach Is Overbroad*

The Government cannot take a broad approach by seeking to apply the crime-fraud exception to expansive categories of communications with counsel – such as all communications featuring Mr. Olmedo Gaxiola and Mr. Durán ("Mexico attorneys") – where doing so would not permit the required individualized intent determinations. Applying the above legal standards, the Government has not carried its burden of demonstrating that specific privileged communications were made with the intent to further a crime or fraud. To the contrary, the Government asserts that broad categories of communications between NXIVM and the Mexico attorneys which the

6

Government states are subject to the crime-fraud exception due to their threatening nature and only attaches some, not all, communications it believes are subject to the crime-fraud exception.

While the Government states agents of NXIVM drafted some of the language eventually sent via the Mexico attorneys, the Government, again, fails to identify and go through each communication, and identify (a) which crime each communication was supposedly in furtherance of, and (b) who the participants in that crime are alleged to have been. This information is essential in assessing the Government's crime-fraud argument. Knowing which crime a communication allegedly furthers is obviously part of the required showing, and the Government has failed to identify the crime for each and every communication. As such, the Government has failed to meet its burden.

### 2. The Government Failed To Establish That Each Communication Was The Perpetration Of A Crime Or Fraud

The crime-fraud exception requires the Government meet two separate requirements: They must "demonstrate [1] that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and [2] that the communications in question were in furtherance of the fraud or crime." *See United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).6 "[M]ere allegations or suspicion [of fraud]... are insufficient." *In re Heritage Bond Litig.*, No. 02-1475, 2004 WL 1970058, at *3 (C.D. Cal. Jul. 23, 2004); *see also United States v. Bob*, 106 F.2d 37, 40 (2d Cir. 1939) ("[T]he mere assertion of an intended crime or fraud is not enough...."). The Government has failed to carry their burden to satisfy these requirements.

In its memorandum, the Government fails to identify and analyze each and every email, fails to provide sufficient detail surrounding each communication, and fails to identify for each communication which potential law was violated to trigger the crime-fraud exception. The Government must go through *each* communication and perform the two-step analysis required in

7

the Eastern District to show that *each* communication at issue was in furtherance *and* intended to facilitate a crime or fraud. *See Aiossa v. Bank of Am., N.A.,* No. CV 10-01275 (JS) (ETB), 2011 U.S. Dist. LEXIS 102207, at *17 (E.D.N.Y. Sep. 12, 2011). The Government's analysis is broad, conclusory, and only addresses probable cause.

Further, the Government fails to establish the second step of the analysis, that *each* of the particular attorney-client communications at issue was used in furtherance of crime or fraud. ("[T]he crime-fraud exception does not create a general waiver of the attorney-client privilege. The [requesting parties] must . . . demonstrate that *specific* communications were made in furtherance of a fraud." (emphasis added)); *Macnamara v. City of New York*, No. 04-cv-9216, 2008 WL 186181 (S.D.N.Y. Jan. 18, 2008) ("[A]pplication of the crime-fraud exception requires a showing of probable cause to believe that *each* of the particular attorney-client communications at issue was used in furtherance of a crime or fraud." *Id*. (emphasis added)). With regards to each communication, which – again – the Government does not identify, the Government must make an evidentiary showing "that the *objective*" of *each* communication to which it seeks to apply the exception "was the perpetration of a fraud," *Aiossa*, 2011 WL 4026902, at *9 (emphasis added), and that NXIVM, with regard to *each* such communication, "solicited counsel's assistance in order to disguise criminal [or] fraudulent" conduct, *Linde*, 608 F. Supp. 2d at 361 (emphasis added). *See also MarketXT*, 2009 WL 7216076, at *3 ("The question before the Court is whether the client consulted the attorney for the purpose of furthering a crime or fraud, and the issue is the client's state of mind." (citations omitted)).

Given the Government must establish some relationship between each communication and some prima facie showing of a crime or fraud and there has been no evidence that the Government is aware of such communication, beyond sheer broad speculation regarding efforts to contact

8

victims and deter them from disclosing certain information, the Government has failed to meet its burden and its motion should be denied.

## II. NXIVM COMMUNICATIONS REGARDING VISAS ARE ALSO PRIVILEGED

As a preliminary matter, NXIVM again notes that NXIVM's counsel is not privy to the emails seized pursuant to search warrants. We are thus hampered in our ability to review the documents referenced by the Government and respond to its claims regarding NXIVM's attorney-client privilege. Nevertheless, as is set forth below, we believe the Government's assertions regarding the applicability of the privilege to emails regarding immigration matters is contrary to well-established law.

The Government separately argues that NXIVM cannot assert an attorney-client privilege between NXIVM representatives and prospective visa applicants. Specifically, the Government suggests that "even if NXIVM were able to demonstrate a valid attorney-client relationship between counsel and each individual visa applicant, there is no legal authority for such a privilege to be extended to communications that involve representatives of an employer-sponsor." Government's memorandum at 25. However, in making this argument, the Government ignores fundamental principles of immigration law and the applicability of the attorney-client privilege in the corporate context.

### A. Immigration Matters Raise Unique Privilege Issues.

It is well established law that corporations enjoy the attorney-client privilege. *See, e.g., CFTC v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389–90, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). However, "[b]ecause the corporation is inanimate, its decisions and communications as a client, as well as for other purposes, must be made by its chosen representatives." *Fitzpatrick v. Am. Int'l*

9

*Grp., Inc.*, 272 F.R.D. 100, 107 (S.D.N.Y. 2010). Thus, because the corporation must act through people, any communications with NXIVM or its representatives related to the representation are privileged. *Id.* Moreover, because corporate representatives would necessarily need to communicate with each other and counsel in order to provide all the information required by counsel, those internal communications are also generally protected by the privilege. *Post v. Killington, Ltd.*, No. 2:07-CV-252, 2009 WL 9152163, at *5 (D. Vt. Jan. 14, 2009) ("The substance of communications between or among representatives of a client corporation, or between them and its attorney or representatives of its attorney, are privileged to the extent that they are made for the purpose of facilitating the rendition of legal services to the client, or . . . to the extent that the communication was necessary to effectuate legal representation.").

In immigration matters, the need for these communications is particularly acute. For most employment-related visas, only the employer/petitioner may appear before the agency and request the visa and appeal any unfavorable decision. In fact, the immigrant beneficiary (i.e., the employee) has no standing to even appear before the agency. 8 C.F.R. § 103.3(a)(1)(iii)(B); *see also Blacher* v. *Ridge*, 436 F.Supp.2d 602, 606 n.3 (S.D.N.Y. 2006) (beneficiary does not have standing); *Ibraimi* v. *Chertoff*, No. 07 Civ. 3644 (DMC), 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008) (same); *Morris* v. *Gonzales*, No. 06 Civ. 4383 (BWK), 2007 WL 2740438, at *6 (E.D. Pa. 2007) (same); *Siddhantam v. Sessions*, No. 3:17-CV-2001-S, 2018 WL 4053366, at *3 (N.D. Tex. Aug. 24, 2018) (same); *USCIS Administrative Appeals Office Practice Manual* Ch. 3.7 (petitioner, not beneficiary has standing to pursue appeal); *Matter of Sano*, 19 I. & N. Dec. 299 (1985).[1] As such, in securing employment visas, it is common for the attorney to represent both

---

[1] Immigration law is notoriously complicated and unique. For example, in the immigration context, "petitioner," "self-petitioner," "applicant," and "beneficiary" are precise legal terms, and an individual may fit the definition for more than one term in different but related benefit requests. For example, a foreign national who is the "beneficiary" of a Form I-140, Immigrant Petition for Alien Worker, filed by a U.S. employer, does not have standing to appeal the

the immigrant beneficiary as well as the employer due to their mutual alignment and the inability of the immigrant beneficiary to secure their own visa. *"Dual Representation in Immigration Practice: The Simple Solution Is the Wrong Solution,"* 5 Geo. Immigr. L.J. 581– 639 (Fall 1991); *see also* "*Dual Representation in Immigration Cases*," by Bruce A. Hake, AILA Doc. No. 05060724, June 7, 2005,https://www.aila.org/practice/ethics/ethics-resources/2005-2011/dual-representation-in-immigration-practice (condensed version of 1991 article reiterating conclusion that counsel represents both petitioner and beneficiary unless separate counsel for each is retained).

In attempting to refute the doctrine of dual intent in the immigration context, the Government can only rely on a matter with readily distinguishable facts. *In re De Mayolo*, No. 06-MC-64-LRR, 2007 WL 1121303, at *7 (N.D. Iowa Apr. 16, 2007). That case involved a situation where illegal aliens contacted a lawyer to assist them with legalization. The lawyer in turn spoke with the employer of the illegal aliens in furtherance of that effort. There was no suggestion of dual representation and in fact no legal advice was provided to the employer. By contrast, in this case, counsel was hired by the corporate employer, provided the beneficiaries information and advice, and worked closely with both the employer and the employee to obtain the mutually desired legal outcome.

### B. The Joint Interest Doctrine Also Protects The Communications At Issue

Clients who share a common interest and consult with attorneys for their mutual benefit are considered joint clients and their communications with each other during the course of representation is within the scope of attorney-client privilege. *Arkin Kaplan Rice LLP v. Kaplan*,

---

denial of that petition. The appeal must be filed by the U.S. employer "petitioner," even if the foreign national is also the "applicant" for a related immigration benefit request, such as a Form I-485, Application to Register Permanent Residence or Adjust Status.

967 N.Y.2d 63 (N.Y. App. Div. 2013); *Yemini v. Goldberg*, 821 N.Y.S.2d 384, 386 (N.Y. Supp. Ct. 2006) ("In order for the common or joint defense privilege to be applicable, the communication must necessarily involve the common defense of the parties invoking this rule."). Here, there is little question that the interests of the employer/petitioner and the employee/beneficiary were aligned. Both parties required the advice of counsel in order to achieve the mutual goal of securing a visa for the employee that would allow him/her to work for the corporation.

## CONCLUSION

The attorney-client privilege is one of the oldest recognized privileges protecting confidential communications and is of critical import in encouraging clients to make full disclosures to their attorneys, so that attorneys may provide sound legal advice based thereon. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), *In re Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d at 1036-37. It should not be violated lightly, and certainly not where the Government is unable to meet its burden in showing the crime-fraud exception applies to specific communications.

At a minimum, once the Government identifies all of the documents which it seeks from NXIVM that it believes are not subject to privilege, NXIVM should be able to review each document the Government claims the exception applies to in order for NXIVM to make its privilege determinations, especially before, if the court is inclined, an *in-camera* review is initiated.

Because the Government has not and cannot meet the crime-fraud exception burden, its motion for a ruling regarding the applicability of the crime-fraud exception in this case should be denied.

**Dated**: January 11, 2019                                Respectfully submitted,

/s/ Michael J. Sullivan
Michael J. Sullivan,
ASHCROFT LAW FIRM, LLC
200 State Street, 7th Floor
Boston, MA 02109
617-573-9400
msullivan@ashcroftlawfirm.com
