

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

MKM:TH
F. #2017R01840

July 16, 2021

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Lauren Salzman, et al.
               Criminal Docket No. 18-204 (S-2) (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines"), to apprise the Court of the substantial assistance provided by the defendant Lauren Salzman and permit the Court, in its discretion, to impose a sentence below the otherwise applicable advisory Guidelines range. Lauren Salzman is scheduled to be sentenced by the Court following her March 25, 2019 guilty plea to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One) and racketeering, in violation of 18 U.S.C. § 1962(c) (Count Two). The applicable advisory Guidelines range is 87 to 108 months' imprisonment.

      As set forth more fully below, Lauren Salzman provided the government with detailed information regarding the criminal activities of her co-defendant Keith Raniere and his co-conspirators, including significant information regarding DOS, the secret organization led by Raniere. She provided credible, detailed testimony at Raniere's trial before this Court in May and June 2019. The extent of Lauren Salzman's cooperation and the significance of her assistance to the government were extraordinary.

      I.       Background and Criminal Conduct

      The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department on May 20, 2021, to which the government has no objection.

      As set forth in the PSR and as acknowledged at her guilty plea, Lauren Salzman was a member of the racketeering enterprise led by Keith Raniere and, starting in

approximately January 2017, she was a first-line DOS "master" who recruited several women into DOS as her "slaves."

Between March 2010 and April 2012, Lauren Salzman, Raniere and others trafficked Daniela for labor and services by confining her to a room for nearly two years on the threat of being sent to Mexico and withholding her birth certificate.  PSR ¶¶ 42-46.  At Raniere's instruction, Lauren Salzman threatened Daniela that if Daniela left the room, she would be sent to Mexico without any identification documents.  Id.  Daniela was confined to the room for nearly two years, during which she went months without human contact.  PSR ¶ 45.  Lauren Salzman reported to Raniere regarding Daniela's "progress," but Raniere frequently told Salzman that Daniela was "game-playing" and manipulating Salzman and needed to stay in the room longer.  Trial Transcript ("Tr.") at 1930-34 (Salzman's testimony).  Raniere forbade Salzman from telling Daniela anything or giving her any information "about what was going on, on the outside with anybody."  Tr. at 1936-37.  At one point, when Daniela cut off her hair, Raniere instructed Lauren Salzman to tell Daniela that Daniela would have to stay in the room until her hair grew back, which Salzman did.  Id.; Tr. at 2899.  In approximately February 2012, after considering suicide, Daniela left the room.  PSR ¶ 46.  Daniela was then driven to Mexico at Raniere's direction and was told that unless she completed book reports for Raniere, she would not receive her birth certificate.

In January 2017, Lauren Salzman was recruited by Raniere to be a first-line "master" in DOS.  As the Court is well aware, DOS was a secret organization led by Keith Raniere and comprised of "masters" who recruited and commanded groups of "slaves."  Lauren Salzman recruited her own "slaves" by approaching prospective recruits and falsely describing DOS as a secret women's empowerment group or sorority while intentionally concealing Raniere's role in the organization.  PSR ¶¶ 60-74.  First-line DOS "masters," including Salzman, required prospective "slaves" to provide "collateral"—including damaging confessions about themselves and loved ones (truthful or not), rights to financial assets, and sexually explicit photographs and videos—to prevent them from leaving the group or disclosing its existence to others.  Id.

DOS "masters, including Lauren Salzman, benefitted financially from recruiting and maintaining DOS "slaves."  DOS "slaves" were coerced into providing labor and services for their "masters" under the threat of the release of their collateral, including editing and transcription work, taking naked photographs, and other tasks.  DOS "masters" were expected to receive approximately 40 hours of labor each week from their "slaves."  PSR ¶¶ 66-67; see Tr. at 1618-1619 (testimony of Lauren Salzman that Raniere decided that "if we each had six slaves who each had six slaves under them . . . you would have 40 hours, approximately 36, but approximately 40 hours of work per week for life from these individuals").

Among the "slaves" recruited into DOS by Lauren Salzman were Jane Doe 6 and Jane Doe 11, whose recruitment into DOS is described in further detail in the PSR.

2

II.    The Guidelines Calculation

The government respectfully submits that the Guidelines calculation set forth in the PSR, reflecting a total offense level of 29 and an advisory Guidelines range of 87 to 108 months' imprisonment, is accurate and should be adopted by the Court.

III.    Applicable Law

Section 5K1.1 of the Sentencing Guidelines provides that:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a)    The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3)    the nature and extent of the defendant's assistance;
>
> (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5)    the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. In addition, it is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

IV. <u>Lauren Salzman's Cooperation with the Government</u>

The government respectfully requests that the Court depart from the applicable Guidelines range based upon Lauren Salzman's extraordinary assistance in the investigation and prosecution of others, as set forth in further detail below. U.S.S.G. § 5K1.1.

A. <u>Assessment of the Assistance Rendered</u>

In the course of lengthy proffer sessions beginning in March 2019, Lauren Salzman fully admitted her involvement in the crimes with which she was charged and provided detailed information about crimes committed by Raniere and other members of the racketeering enterprise.

Lauren Salzman's cooperation substantially contributed to the government's successful prosecution of Raniere. By virtue of her close, decades-long relationship with Raniere, Lauren Salzman was privy to a significant amount of information regarding Raniere's role in directing criminal activity within the enterprise, even where Raniere had taken great pains to conceal his role. Lauren Salzman provided detailed testimony at Raniere's trial concerning, among other things, (1) Raniere's leadership of the racketeering enterprise; (2) Raniere's orders to confine Daniela to a room, without human contact, for nearly two years; (3) Raniere's role as the "Grandmaster" in DOS; (4) Raniere's direction that several DOS "slaves" be assigned to have sex with him; (5) efforts by Raniere and Clare Bronfman to discredit DOS victims and lie about Raniere's involvement in DOS; and (6) statements regarding Raniere's efforts to secure a "virgin successor" as a replacement for Camila. Lauren Salzman also provided the government with information about additional criminal activity, as well as efforts by Raniere and others, including other first-line DOS "masters," to obstruct the government's investigation.

Lauren Salzman's credible and corroborated trial testimony substantially assisted the government in securing Raniere's conviction at trial, thereby achieving a measure of closure for Raniere's victims.

B. <u>Completeness and Reliability of the Information</u>

Lauren Salzman provided full, complete and reliable information during her numerous meetings with the government. Lauren Salzman fully admitted her own role within the criminal enterprise and her participation in criminal activity, including some criminal activity as to which the government was previously unaware.

C. <u>Nature and Extent of Lauren Salzman's Cooperation</u>

As set forth above, Lauren Salzman provided extraordinary assistance to the government's investigation and prosecution of this case. She met with the government on dozens of occasions, both in proffers and in preparation for trial testimony, and answered all the government's questions, including questions about crimes she committed, as well as criminal activity engaged in by her close friends and family members, including her mother.

4

And not only was Lauren Salzman's cooperation critically important in securing Raniere's conviction, it is highly likely that the fact of her public guilty plea was a factor in other defendants' decisions to plead guilty. Lauren Salzman could have given racketeering proof at a trial against any of her co-defendants who pleaded guilty after she did, including Allison Mack, Clare Bronfman and Kathy Russell.

        D.        <u>Timeliness of the Defendant's Assistance</u>

Lauren Salzman began cooperating with the government in March 2019, two months prior to the commencement of trial in this case.

        V.        <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits this motion to request that the Court, in its discretion, impose a sentence below the applicable Sentencing Guidelines range.

        Respectfully submitted,

        JACQUELYN M. KASULIS
        Acting United States Attorney

By:    /s/
        Tanya Hajjar
        Assistant U.S. Attorney
        (718) 254-7000

cc:        Counsel of Record (by ECF and email)
        United States Probation Officer Jennifer G. Fisher (by email)